717 F.Supp. 1413 (1989)
James COCHRAN, Plaintiff,
v.
ST. LOUIS PREPARATORY SEMINARY, Defendant.
No. 88-1430C(1).
United States District Court, E.D. Missouri.
August 18, 1989.
J. Martin Hadican, Clayton, Mo., for plaintiff.
Dennis Collins, Greensfelder, Hemker, Weise, Gale & Chappelow, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff James Cochran brought this action against St. Louis Preparatory Seminary ("Seminary") alleging that Seminary dismissed plaintiff because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Plaintiff also alleges in pendent state claims that Seminary breached its employment contract with plaintiff (Count II) and that Seminary negligently inflicted emotional distress, mental anguish and physical suffering upon plaintiff (Count III). Seminary has filed a motion for summary judgment, supported by affidavits, wherein Seminary asserts that this Court lacks jurisdiction over plaintiff's ADEA claim because Seminary is a pervasively religious institution, and application of the ADEA would raise serious constitutional issues. *1414 Seminary argues in the alternative that the Court should find that the application of the ADEA under the facts of this case would violate the establishment and free exercise clauses of the First Amendment. Furthermore, Seminary argues that plaintiff's pendent state claims are not cognizable under the laws of the State of Missouri.
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R. Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
Recently, the Supreme Court noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id. at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).
No question exists but that Seminary is primarily a religious institution. Defendant has provided ample support through affidavits that Seminary's primary goal is to prepare students for the priesthood and to inculcate Roman Catholic values in its students. Plaintiff does not dispute that all faculty members, both lay and clerical, are expected to serve as religious role models, participate in spiritual activities and "carry religious fervor and conviction" into their classes. Plaintiff simply asserts that defendant can be precluded from age discrimination without violating the Establishment or Free Exercise Clause and that, in this case, no religious practice or principle will be burdened. Defendant suggests, however, that this Court need not determine whether the application of the ADEA to defendant under the facts of this case violates the First Amendment. Rather, defendant argues, because the application of the ADEA to institutions such as Seminary poses a significant risk that the First Amendment will be infringed, this Court should find that Seminary does not fall within the ADEA's coverage.
Seminary urges the Court to apply the rule of statutory construction set forth by the Supreme Court in NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). In Catholic Bishop the Court considered whether the National Labor Relations Act provided authority for the National Labor Relations Boards to exercise jurisdiction over church-operated schools that hired both lay and clerical teachers and offered both religious and non-religious courses. The Court noted that "an Act of Congress ought not be construed to violate the constitution if any other possible construction remains available." *1415 Id. at 500, 99 S.Ct. at 1318. Accordingly, the Court determined that the proper course of inquiry was to determine first whether the Board's exercise of jurisdiction "would give rise to serious constitutional questions," and, if so, second, whether Congress clearly expressed affirmative legislative intent that the statute extend such jurisdiction. Id. at 501, 99 S.Ct. at 1319.
The Court found that regardless of whether a teacher in a church-operated school teaches secular or non-secular subjects, such teachers play a "unique role" in fulfilling the school's mission. Id. The Court concluded:
We see no escape from conflicts flowing from the Board's exercise of jurisdiction over teachers and church-operated schools and the consequent serious First Amendment questions that would follow. Id. at 504, 99 S.Ct. at 1320.
The Court then turned to the question of Congress' intent. Finding that the statute and its legislative history "gave no consideration to church operated schools," the Court concluded that Congress had not clearly expressed its affirmative intent that the Act should encompass teachers and church-operated schools. The Court therefore concluded that "Congress did not contemplate that the Board would require church-operated schools to grant recognition to unions as bargaining agents for their teachers," and that the Board lacked jurisdiction over such teachers. Id. at 506-507, 99 S.Ct. at 1322.
Plaintiff argues that Catholic Bishop is factually distinct from the case at bar. Plaintiff also asserts that the Supreme Court has instituted a "trend" towards adopting the rule of statutory construction that silence within remedial statutes denotes inclusion rather than exclusion of entities not explicitly placed within the statute's scope. The Court acknowledges that the operation of the NLRB and the provisions of the National Labor Relations Act differ from the ADEA. Nonetheless, the Court finds that Catholic Bishop provides the appropriate framework for the resolution of this case. The Court in Catholic Bishop established a framework for determining when an Act of Congress that regulates employment relationships can and should apply to teachers in church-operated schools. Regardless of whether such an act is deemed "regulatory", as in Catholic Bishop or "remedial", as in the ADEA, such federal legislation ultimately affects worker-employer relationships, employment decisions and the identity of the faculty in such institutions. The Court views such decisions and relationships as playing an important role in the religious mission of church-operated schools. See generally Catholic Bishop, 440 U.S. at 501-503, 99 S.Ct. at 1319-1320. Thus, although the facts of Catholic Bishop are distinct from the case at bar, the Court finds that the principles of Catholic Bishop apply equally to both cases. Likewise, the Court is not persuaded that the Supreme Court has abandoned the analytical framework and rules of statutory construction set forth in Catholic Bishop for a different rule. Indeed, the Court's decision in DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council, 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), reaffirms the viability of Catholic Bishop. Furthermore, the applicability of Catholic Bishop's rule of statutory construction to the ADEA depends upon the resolution of the first inquiry set forth in Catholic Bishop: whether the application of the ADEA to Seminary would give rise to serious constitutional questions. It is to this inquiry that the Court now turns.
In Catholic Bishop the Supreme Court found that the Board's exercise of jurisdiction over church-operated schools would lead to governmental entanglement with the religious mission of such schools in contravention of Lemon v. Kurtzman, 403 U.S. 602, 617, 91 S.Ct. 2105, 2113, 29 L.Ed.2d 745 (1971). Catholic Bishop, 440 U.S. at 501-504, 99 S.Ct. at 1319-1321. Admittedly, the Court in Catholic Bishop was concerned with the NLRB's enforcement of mandatory collective bargaining, and no such procedure or regulation is provided for in the ADEA. Application of the ADEA does, however, implicate enforcement by the EEOC. This involves conciliation *1416 efforts by the EEOC as well as investigations. Furthermore, ADEA claims that reach federal court will inevitably involve inquiries pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as to whether the employer's rationale for a particular employment action is made in good faith or is merely pretextual. Finally, a successful plaintiff under the ADEA may be awarded injunctive relief such as reinstatement, promotion or compulsory employment. 29 U.S.C. § 626(b).
This Court concludes that the application of the ADEA to Seminary would give rise to serious constitutional questions. In Catholic Bishop the Supreme Court clearly stated that inquiries by the Board into the good faith of the school's position that its actions were mandated by religious creeds "may impinge on rights guaranteed by the religion clauses." Catholic Bishop, 440 U.S. at 502, 99 S.Ct. at 1320. Likewise, the Court observed, in Lemon v. Kurtzman, that the "evaluation of the religious content of a religious organization is fraught with the sort of entanglement that the Constitution forbids." 403 U.S. at 620, 91 S.Ct. at 2115. See also New York v. Cathedral Academy, 434 U.S. 125, 133, 98 S.Ct. 340, 345-346, 54 L.Ed.2d 346 (1977) (Litigation between church and state as to what does or does not have religious meaning "touches the very core of the constitutional guarantees against religious establishment."). The application of the ADEA to Seminary could cause the Archdiocese to "steer far wider of the unlawful zone" of conduct prohibited by the ADEA, thereby imposing a chilling effect on the Archdiocese's exercise of control over the school's religious mission. Catholic Bishop of Chicago v. NLRB, 559 F.2d 1112, 1124 (7th Cir.1977), aff'd on other grounds, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). Furthermore, as courts attempt to enforce awards of injunctive relief under the ADEA, the state's entanglement with religious institutions increases. In light of these concerns and the pervasively religious character of Seminary, this Court must conclude that serious constitutional questions would follow the application of the ADEA to schools such as Seminary.
Having answered the first inquiry of Catholic Bishop in the affirmative, the Court now turns to the question of Congress' intent to extend the ADEA to institutions such as Seminary. The statute itself is silent as to whether religious institutions are "employers" subject to the ADEA. Plaintiff has indicated no language in the Act or its legislative history which suggests affirmatively that Congress intended to include church-operated schools under the ADEA. Defendant indicates that both the Act and its legislative history are silent as to such an intention, and the Court must concur. See H.R.Rep. No. 805, 90th Cong., 1st Sess., reprinted in (1967) U.S.Code Cong. & Admin.News, pp. 2213, et seq.; S.Rep. No. 723, 90th Cong., 1st Sess. (1967); 113 Cong.Rec. 34,738-34,755 (1967); 113 Cong.Rec. 35,053-35,057 (1967); 113 Cong.Rec. 35,228-35,229 (1967); 113 Cong.Rec. 31,248-31,257 (1967). Therefore, the Court must conclude that, because Congress has not clearly expressed an intent to apply the ADEA to church-operated schools, Congress did not contemplate that the Act would be applied to such schools. Accordingly, defendant's motion for summary judgment will be granted with respect to Count I of plaintiff's complaint.
Having dismissed plaintiff's claim under the ADEA, all that remains are plaintiff's state claims. When federal claims are dismissed before trial, state claims should be dismissed as well. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, the Court need not consider the merits of defendant's motion for summary judgment with respect to plaintiff's state claims, because the Court will decline to exercise jurisdiction over Counts II and III of plaintiff's complaint. Accordingly, Counts II and III of plaintiff's complaint will be dismissed.