736 F.Supp. 1018 (1990)
The Rev. Anne S. SCHARON, Plaintiff,
v.
ST. LUKE'S EPISCOPAL PRESBYTERIAN HOSPITALS, and The Rev. J. Edwin Heathcock, Defendants.
No. 89-1327C(1).
United States District Court, E.D. Missouri.
May 15, 1990.
Louis Gilden, St. Louis, Mo., for plaintiff.
Robert Kaiser, Lashly, Baer & Hamel, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff is an ordained Episcopal priest who was employed by the defendant hospital ("St. Luke's") from June, 1978, through October 2, 1987, as a chaplain. The Rev. J. Edwin Heathcock ("Heathcock") was her supervisor. The hospital is a not-for-profit corporation, operated under the auspices of the Diocese of Missouri of the Protestant Episcopal Church and the Presbytery of Giddings-Lovejoy of the Presbyterian Church (U.S.A.). Plaintiff brings this action alleging she was discriminatorily terminated on the basis of sex and age, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630 et seq., respectively. Defendants have filed a motion for summary judgment questioning the constitutionality of applying those anti-discrimination statutes in the religious context of plaintiff's employment.
In a recent case involving the application of the ADEA to religiously-affiliated schools, Cochran v. St. Louis Preparatory Seminary, 717 F.Supp. 1413 (E.D.Mo. 1989), this Court drew upon the Supreme Court's mode of analysis in NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). The Court again finds this mode of analysis applicable. The first determination to be made is whether the application of Title VII and the ADEA in the present context "would give rise to serious constitutional questions." Catholic Bishop, 440 U.S. at *1019 501, 99 S.Ct. at 1319. If so, then the Court must determine whether Congress intended the statutes to have application in this context. Because an Act of Congress "ought not be construed to violate the Constitution if any other possible construction remains available," the statutes will not be construed to apply here unless "there [is] present the affirmative intention of the Congress clearly expressed" for them to so apply. Id. at 500, 99 S.Ct. at 1319. Finally, if the Court finds that Congress affirmatively and explicitly intended the application of either statute to the present situation, then the Court must make the "difficult and sensitive" determination of the constitutionality of that application, given that "[t]he First Amendment ... is a limitation on the power of Congress." Id. at 507, 499, 99 S.Ct. at 1322, 1318.

Title VII
The Court is quite confident that the application of Title VII to the employment relation between plaintiff and defendants here would give rise to serious constitutional questions. In the context of this employment discrimination action, the nature of the employment relation overshadows in importance the nature of the institution.[1] The parties have gone to great lengths in arguing the relative religiosity of the defendant hospital. The Court finds that it is a church-affiliated institution with "substantial religious character." Lemon v. Kurtzman, 403 U.S. 602, 616, 91 S.Ct. 2105, 2113, 29 L.Ed.2d 745 (1971). For example, the hospital's Board of Directors is composed of four specified representatives of the two church bodies and their unanimously agreed-upon nominees for the other directorships. See Articles of Amendment to the Articles of Incorporation, pp. 1, 3-4. Amendments to the Articles of Association require approval by the two governing religious bodies, the Episcopal Diocese of Missouri and the Presbytery of Giddings-Loveyjoy. See Articles of Amendment to the Articles of Incorporation, p. 4.
The Court is unpersuaded by plaintiff's attempts to characterize her position as one not differing in nature from obviously secular employment in other departments of the hospital. Plaintiff contends that "[a]s no religious significance can be given to the doctors' unit or the kitchen staff, no religious significance can be given to the chaplain unit," the function of both being to heal. Memorandum in Opposition, p. 6. Even if some duties are shared by the chaplain department and others, e.g., counseling services, the provision of spiritual comfort and guidance is far different from the secular staff's "ministering" to the patient's physical or even emotional needs.[2] Plaintiff acted as a minister, e.g., by visiting hospital patients, reading the Bible to them, praying with them, performing baptisms, presiding at funerals, administering communion, performing chapel services, etc. See Plaintiff's deposition, pp. 57-58; Plaintiff's Chaplain Activity Reports, Plaintiff's Exh. 100. These activities are inherently religious and so confer on plaintiff's chaplain position its inherently religious nature. It is a position "important to the *1020 spiritual and pastoral mission of the church" which plaintiff served. Rayburn, 772 F.2d at 1169.
Plaintiff is equally unsuccessful in persuading the Court that because her claims involve only age and sex, that ecclesiastical matters will not enter in to her Title VII case. The Court cannot disregard the ecclesiastical nature of defendants' claims that plaintiff was discharged in part because she was not "following liturgical requirements" or the inevitable questions of a religious nature inherent in the determination, necessary to a Title VII claim, whether plaintiff was qualified for her position and satisfied its normal requirements. To adapt the words of Chief Justice Burger to the present context, that determination:
will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the [hospital's] religious mission. It is not only the conclusions that may be reached by the [Court] which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions.
Catholic Bishop, 440 U.S. at 502, 99 S.Ct. at 1320.
Having determined that the application of Title VII in the present context presents constitutional questions, the Court must next determine whether Title VII contains the affirmative intention of the Congress to so apply. The Court adopts and follows the careful analysis of this question undertaken by the Fourth Circuit in Rayburn, 772 F.2d at 1166-67, and so agrees that:
Given the wording of the statute and the history behind it, we conclude that Title VII, by "the affirmative intention of the Congress, clearly expressed," ... applies to the employment decision in this case.
Id. at 1167. Without repeating the entirety of the Fourth Circuit's discussion, this Court notes particularly Congress' rejection of proposals to broaden the exception granted to religious institutions in Title VII to discriminate on the basis of religion when hiring employees. Id. Because the Court finds the present case to be within the intended ambit of Title VII, the Court must determine whether the Free Exercise Clause forbids its application here.
In making the constitutional determination, this Court is mindful that:
The Supreme Court has consistently recognized that the religion clauses are subject to a balancing of interests test. E.g., McDaniel v. Paty, 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978). The Court has also concluded that certain civil rights protected in secular settings are not sufficiently compelling to overcome certain religious interests. Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929).
Minker v. United Methodist Church, 894 F.2d 1354, 1357 (D.C.Cir.1990). In Gonzalez, Justice Brandeis wrote:
Because the appointment is a canonical act, it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them. In the absence of fraud, collusion or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive....
Gonzalez, 280 U.S. at 16, 50 S.Ct. at 7. The Supreme Court itself has more recently adverted to the "suggested `fraud, collusion, or arbitrariness' exception" to the ban on civil court review of ecclesiastical decisions as "dictum only." Serbian Orthodox Diocese v. Milivojevich, 426 U.S. 696, 712, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976).
Guided by the vast weight of judicial opinion preceding this case, the Court finds that the Free Exercise Clause precludes the application of Title VII to the instant controversy. Otherwise, a determination of whether plaintiff satisfied the requirements of her position and what motivated plaintiff's discharge from her chaplaincy would necessarily be undertaken, and such tasks would involve the type of excessive entanglement in religious matters that the First Amendment forbids.

*1021 The ADEA

The Court's treatment of the ADEA claim is the simpler for the Court's having so recently set forth its views in Cochran. For precisely the reasons set forth above with respect to Title VII, the Court finds that application of the ADEA here would give rise to serious constitutional questions. Proceeding to the second phase of the analysis, the Court repeats its holding in Cochran:
[T]he Court must conclude that, because Congress has not clearly expressed an intent to apply the ADEA to [the hiring of chaplains by church-operated hospitals], Congress did not contemplate that the Act would be [so applied].
Cochran, 717 F.Supp. at 1416.

Conclusion
Having found that the First Amendment precludes the application of Title VII to the instant case and that the ADEA does not apply, the Court grants defendants' motion for summary judgment. Defendants' motion for separate trials is denied as moot.
NOTES
[1] In weighing the possibility of First Amendment questions being raised by the application of anti-discrimination laws in religious contexts, no general rules are possible. In Cochran, for example, the Court dealt with an admittedly pervasively religious institution and an admittedly secular employee. Here the Court deals with what it determines to be an institution with substantial religious character and an employee whose position is inherently religious in nature. The Court's determination here intimates no view on the constitutional sensitivity of Title VII's application to any employment relation beyond the one immediately before the Court; "[religious institutions'] employment decisions may be subject to Title VII scrutiny, where the decision does not involve the church's spiritual functions." Rayburn v. General Conf. of Seventh-Day Adventists, 772 F.2d 1164, 1171 (4th Cir.1985).
[2] As the Fourth Circuit said when addressing such an argument in the context of a church's hiring of pastoral staff:

[T]he burden of potential interference ... is not diminished by the fact that lay church members may on appropriate occasions be called upon to participate in one or more of these activities or to serve in similar capacities ... Lay ministries ... do not compare to the institutional selection for hire of one member with special theological training to lead others.
Rayburn, 772 F.2d at 1168.