823 F.Supp. 1483 (1993)
Sidney WEISSMAN, Plaintiff,
v.
CONGREGATION SHAARE EMETH and Joy Liss, in her capacity as President, Congregation Shaare Emeth, Defendants.
No. 4:92CV00199 GFG (CDP).
United States District Court, E.D. Missouri, E.D.
June 9, 1993.
*1484 Michael J. Hoare, Michael J. Hoare & Associates, St. Louis, MO, for plaintiff.
Joseph H. Mueller, Moser and Marsalek, Charles A. Werner, Schuchat and Cook, St. Louis, MO, for defendants.

MEMORANDUM AND ORDER
PERRY, United States Magistrate Judge.
This matter is before the Court on defendants' motion for partial summary judgment. This case was referred to the undersigned for trial and all other purposes with the consent of the parties pursuant to 28 U.S.C. § 636(c).
Plaintiff was employed as the Temple Administrator of Congregation Shaare Emeth from January 13, 1986 to December 21, 1990. He alleges that he was terminated due, at least in part, to his age.[1] Plaintiff was born in 1927, and so is in the category of persons protected under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.
Congregation Shaare Emeth is a Reform Jewish Congregation (hereinafter referred to as the "Temple"), and its purpose is to provide a means and place for its members to engage in religious worship, ritual, programs, education and celebrations. The Temple Administrator serves as the administrative officer of the congregation, implementing Temple policies. The position is responsible for logistical support for all Temple activities, and provides administrative and personnel services to all employees of the Temple. (Defts.Exh. A at p. 1.) The Temple Administrator also provides the "initial point of contact with prospective and present members, interpreting for them the programs of the Temple and advantages of affiliation ..." (Id.) The Temple Administrator is also required to "promote a positive image of the Temple among its members and to the general community by being accessible and knowledgeable." (Id. at p. 2.) Finally, among the necessary qualifications for the position, the Temple Administrator is required to "have a positive attitude towards Jewish life and a Jewish background, enabling the administrator to understand the work of the Temple, its purposes and highest ideals and goals." (Id. at p. 4.)
Defendants (the Temple and its President) have moved for summary judgment on plaintiff's age discrimination claim. They assert that the ADEA does not apply to religious institutions such as Congregation Shaare Emeth. Alternatively, defendants contend that even if the ADEA applies generally to religious institutions, it would violate the first amendment for the ADEA to apply to defendants on the facts of this case.
Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Eighth Circuit has noted that in employment cases, summary judgment should be used only in "those rare instances where there is no dispute of fact and there exists only one conclusion." Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1244 (8th Cir.1991).
Defendant's motion presents no disputed issues of material fact. The motion presents the legal question whether a religious institution such as defendant here is an "employer" as that term is used in the ADEA. Section 630(b) of the ADEA defines "employer" as

*1485 ... a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... The term also means (1) any agent of such a person, ...
29 U.S.C. § 630(b). The ADEA is silent on the question whether religious institutions are employers.
Several courts have considered this issue, with the majority holding that the ADEA does not extend to religious institutions. See Geary v. Visitation of the Blessed Virgin Mary Parish School, No. 92-5769, 1992 WL 392599, 1992 U.S.Dist. LEXIS 19693 (E.D.Pa. December 21, 1992); DeMarco v. Holy Cross High School, 797 F.Supp. 1142 (E.D.N.Y.1992); Cochran v. St. Louis Preparatory Seminary, 717 F.Supp. 1413, 1415-16 (E.D.Mo.1989). But see Lukaszewski v. Nazareth Hospital, 764 F.Supp. 57, 61 (E.D.Pa.1991) ("The fact that Congress subjected religious organizations to most of the requirements of Title VII strongly suggests that Congress also intended to extend ADEA coverage to such institutions [because] the statutory provisions defining the scope of coverage are virtually identical in the two statutes"). The Eighth Circuit specifically declined to decide the issue in Scharon v. St. Luke's Episcopal Presbyterian Hosp., 929 F.2d 360, 361 n. 2 (8th Cir.1991). There the court assumed that the act applied, but held that allowing a priest's claim to go forward under Title VII and the ADEA would violate the First Amendment, relying on Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).
All courts considering the issue have looked to the analysis set forth by the Supreme Court in NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). There the Court was called upon to determine whether the National Labor Relations Act covered teachers in church-operated schools. In holding that it did not, the Court noted that "an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." 440 U.S. at 500, 99 S.Ct. at 1318. The Court held that if NLRB jurisdiction "would give rise to serious constitutional questions," it should find such jurisdiction only if there was a "clear expression of an affirmative intention of Congress that teachers in church-operated schools should be covered by the Act." 440 U.S. at 504, 99 S.Ct. at 1320. The Court then made only that "narrow inquiry," and determined that the NLRA should be interpreted not to extend to the school teachers.
Under the Catholic Bishop analysis the first question to be decided is whether applying the ADEA to defendant in this case "gives rise to serious constitutional questions." 440 U.S. at 501, 99 S.Ct. at 1319. In a somewhat similar case this Court has held that the application of the ADEA to a teacher's claim against a religious seminary would give rise to serious constitutional questions. See Cochran v. St. Louis Preparatory Seminary, 717 F.Supp. 1413, 1415-16 (E.D.Mo. 1989). In Cochran the Court discussed that extending ADEA jurisdiction to the seminary would "implicate enforcement by the EEOC", in other words, would subject the institution to EEOC investigation and conciliation efforts. It also noted that the Court would "inevitably" be required to consider whether the employer's rationale for a particular employment action is made in good faith or is merely pretextual, which could involve excessive court entanglement in determination of religious issues. Finally, the Court noted that a successful plaintiff under the ADEA might be awarded injunctive relief such as reinstatement, promotion, or compulsory employment, which again could raise First Amendment issues. The Cochran Court therefore held that the application of the ADEA to the seminary would give rise to serious constitutional questions involving the exercise of religious freedom.
Plaintiff asserts that Cochran and other cases holding that the ADEA does not apply to religious institutions are distinguishable because they involved employees with religious, as opposed to administrative, duties. First, unlike those cases involving schools and hospitals, here the Temple has no significant secular functions, but is a pervasively religious institution. Second, it appears that plaintiff's duties were not purely administrative, *1486 in that the proper exercise of those duties would necessarily involve application or explanation of the Temple's religious issues and positions, especially in the duties relating to membership and public relations. It is not necessary to determine the precise nature of those duties, however, because the inquiry required by Catholic Bishop is the "narrow" one required to determine whether the application of the ADEA to the religious institution "presents a significant risk that the First Amendment will be infringed," not whether application of the ADEA would actually violate the First Amendment. 440 U.S. at 502, 99 S.Ct. at 1319.
Here the undersigned concludes that a significant risk of infringement exits. Application of the ADEA to the Temple could lead to government intervention into the very structure of the Temple organization and management. The Temple Administrator appears to be the highest ranking non-rabbinical employee of the Temple, and the duties he performs are inextricably intertwined with the religious purposes of the institution. Applying not only EEOC investigation and conciliation, but also possible court-ordered remedies such as reinstatement could well raise First Amendment issues.
The next inquiry under the Catholic Bishop analysis is whether there is evidence of any affirmative intention of the Congress, clearly expressed, to extend the ADEA to religious institutions. The legislative history reveals that Congress did not discuss whether the Act extended to religious institutions when it enacted the statute. See H.R.Rep. No. 805, 90th Cong., 1st Sess., reprinted in (1967) U.S.Code Cong. & Admin.News, pp. 2213 et seq.; S.Rep. No. 723, 90th Cong., 1st Sess. (1967); 113 Cong.Rec. 34,738-34, 755 (1967); 113 Cong.Rec. 35,053-35,057 (1967); 113 Cong.Rec. 35,228-35,229 (1967); 113 Cong.Rec. 31,248-31,257 (1967). This absence of any affirmative intent to include religious organizations proves fatal to plaintiff's age discrimination claim, and the motion for summary judgment on that claim will therefore be granted.
Because the Court concludes that the ADEA does not apply to claims against a religious institution such as defendant, it is not necessary to consider defendants' alternative argument, that application of the ADEA to this particular case would violate the First Amendment. Catholic Bishop provides a framework by which the Court may determine the narrow issue of whether the Act applies, and thus avoid unnecessary decision of constitutional issues. In Scharon v. St. Luke's Episcopal Presbyterian Hosp., 929 F.2d 360 (8th Cir.1991), the Eighth Circuit reached the constitutional issue only by assuming, without deciding, that the ADEA applied. Because this Court has determined that the Act does not apply, it will not reach the First Amendment issue. See DeMarco, 797 F.Supp. at 1149-50.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion for partial summary judgment is granted.
NOTES
[1] Plaintiff also alleges that his termination was due, at least in part, to his sex, in violation of Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e et seq. Defendants have not moved for summary judgment on the Title VII claim.