839 F.Supp. 680 (1993)
Sidney WEISSMAN, Plaintiff,
v.
CONGREGATION SHAARE EMETH and Joy Liss, in her capacity as President, Congregation Shaare Emeth, Defendants.
No. 4:92CV00199 GFG (CDP).
United States District Court, E.D. Missouri, E.D.
December 22, 1993.
*681 Michael J. Hoare, Michael J. Hoare, P.C., St. Louis, MO, for plaintiff.
Joseph H. Mueller, Moser and Marsalek and Charles A. Werner, Schuchat and Cook, St. Louis, MO, for defendants.

MEMORANDUM AND ORDER
PERRY, United States Magistrate Judge.
This matter is before the Court on plaintiff's motion for reconsideration, as supplemented on November 8, 1993. This case was referred to the undersigned for trial and all other purposes with consent of the parties pursuant to 28 U.S.C. § 636(c).
Plaintiff was employed by the defendant Congregation Shaare Emeth (hereinafter referred to as the "Temple") as the temple administrator. After he was discharged from that position, he brought this claim alleging employment discrimination on account of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and on account of his sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. On June 9, 1993, the undersigned granted defendants' motion for partial summary judgment on plaintiff's ADEA claim, holding that the ADEA does not apply to claims against a religious institution such as defendant. See Weissman v. Congregation Shaare Emeth, 823 F.Supp. 1483 (E.D.Mo.1993). The Title VII claims are set for non-jury trial on January 11, 1994. Plaintiff has now asked the Court to vacate the June 9, 1993 decision because, plaintiff argues, his duties were secular, rather than religious, in nature.
The question before this Court is whether the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. applies to religious institutions at all. All courts considering this issue have applied the analysis set forth in NLRB v. Catholic Bishop, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), to answer the question. The test established by that decision is that if the exercise of jurisdiction "would give rise to serious constitutional questions," a court should find such jurisdiction only if there was a "clear expression of an affirmative intention of Congress that the subject employees at a religious institution should be covered by the act in question. 440 U.S. at 501, 99 S.Ct. at 1319.
Under the Catholic Bishop analysis, therefore, the first question to be decided is whether applying the ADEA to defendant in this case "gives rise to serious constitutional questions." 440 U.S. at 501, 99 S.Ct. at 1319. Plaintiff contends that since his job was "purely secular," and because he was fired for "strictly secular" reasons, applying the ADEA to defendant would not infringe upon the first amendment. As the undersigned noted previously, "it is not necessary to determine the precise nature of [plaintiff's] duties, however, because the inquiry required by Catholic Bishop is the `narrow' one required to determine whether the application of the ADEA to the religious institution `presents a significant risk that the First Amendment will be infringed,' not whether application of the ADEA would actually violate the First Amendment. 440 U.S. at 502, 99 S.Ct. at 1319." Weissman, 823 F.Supp. at 1486.
In the case at hand there was considerable evidence presented on the motion for summary judgment that plaintiffs job had both religious and secular components. The job description of Temple Administrator was provided to the Court in support of defendant's motion for partial summary judgment, and it cast plaintiff's secular duties in a religious light. Among plaintiff's duties, for instance, was that of "implementing Temple policies." Plaintiff was also responsible for providing the "initial point of contact with prospective and present members, interpreting for them the programs of the Temple and advantages of affiliation ..." Plaintiff also coordinated and maintained the Temple calendar of events, and was responsible for public relations. Plaintiff was also the "business manager" for the Temple. The job description also required the administrator to *682 "have a positive attitude towards Jewish life and a Jewish background, enabling the administrator to understand the work of the Temple, its purposes and highest ideals and goals."
Plaintiff has now supplied an affidavit explaining his job was secular and not religious in nature. The undersigned held a hearing on plaintiff's motion to reconsider on December 14, 1993, to allow plaintiff to fully and completely amplify his position, and to allow defendant to respond. Defendant responded that plaintiff's duties were not "purely secular" and plaintiff was not fired for "strictly secular" reasons. Defendant cited its response to interrogatory No. 1 in support of this position. Through interrogatory No. 1 plaintiff sought the putative reasons for his termination, and defendant responded, among other reasons, that plaintiff was "not properly performing [the] position as Administrative Director of the Temple." Defendant's attorney argued at the hearing that in order for plaintiff to "properly exercise his duties it would involve religious duties." Defendant argues, further, that plaintiff admitted, by way of omission on his affidavit, that he did not fully perform his religious duties.
Plaintiff's arguments and affidavit totally ignore that portion of his job description that requires that he "have a positive attitude towards Jewish life and a Jewish background, enabling the administrator to understand the work of the Temple, its purpose and highest ideals and goals." (Job Qualifications, ¶ 5.) While plaintiff might argue that this paragraph should not be taken out of context, and it must be read in light of his other job qualifications (which include such requirements as the Temple administrator must "be a team member" with "excellent people skills" etc.) the undersigned finds that paragraph five tilts the scales in favor of defendant. If, as defendant has argued, plaintiff was not properly performing the position of Temple Administrator, and because every aspect of plaintiff's job description includes the religious element set out in paragraph five, there is the risk that this case would infringe on the first amendment by requiring this Court to inquire into whether plaintiff understood "the work of the Temple, its purposes and highest ideals and goals," as he went about performing his duties. This case, accordingly, "gives rise to serious constitutional questions." See Catholic Bishop, 440 U.S. at 501, 99 S.Ct. at 1319. Once again, it is the risk of infringement which forms the basis for this Court's decision. See id. at 502, 99 S.Ct. at 1319.
Having identified the existence of a "serious constitutional question" the Court next must ascertain whether Congress has provided a "clear expression of an affirmative intention" that the ADEA apply to religious institutions. See Catholic Bishop, 440 U.S. at 501, 99 S.Ct. at 1319. The legislative history of the ADEA reveals that Congress did not discuss whether the Act extended to religious institutions when it enacted the statute. See H.R.Rep. No. 805, 90th Cong., 1st Sess., reprinted in (1967), U.S.Code Cong. & Admin.News, pp. 2213 et seq.; S.Rep. No. 723, 90th Cong., 1st Sess. (1967); 113 Cong.Rec. 34,738-34,755 (1967); 113 Cong.Rec. 35,228-35,229 (1967); 113 Cong. Rec. 31,248-31,257 (1967). There is simply no "clear expression" contained here, and its absence is fatal to plaintiff's claim. The Supreme Court in Catholic Bishop could have elucidated the requisite Congressional intention in any number of ways which would have allowed for deduction or inference. The "clear expression of an affirmative intention" test leaves no room for deduction or inference, however. Absent a Congressional mandate that the ADEA apply to religious institutions, Catholic Bishop requires this Court to hold that the ADEA does not extend to a Temple. See Ritter v. Mount St. Mary's College, 495 F.Supp. 724, 728-29, nn. 7-8 (D.Md.1980) (the argument that, since Congress intended to extend Title VII to religious institutions, it must also have intended to extend the ADEA to religious institutions "does not meet the exacting standards of the Catholic Bishop clear, affirmative intention test"), aff'd in part and rev'd in part without op., 738 F.2d 431, later opinion, 814 F.2d 986 (4th Cir.), cert. denied, 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987).
Plaintiff has argued that there can be no doubt that were plaintiff a janitor rather *683 than a Temple Administrator the ADEA would extend to his case. It is not necessary to decide that issue here, but plaintiff's argument misses a crucial distinction among the cases. Plaintiff reaches this conclusion with the support of such cases as DeMarco v. Holy Cross High School, 4 F.3d 166 (2d Cir.1993) and Geary v. Visitation of the Blessed Virgin Mary Parish School, 7 F.3d 324 (3d Cir.1993). In each of these cases lay teachers were terminated by parochial schools. Notably, neither church associated with each of these parochial schools was sued. Indeed, the undersigned has found no published cases, with the exception of the case at hand, where individual temples, synagogues or churches, as such, have been sued under the ADEA. See Stouch v. Brothers of the Order of Hermits of St. Augustine, 836 F.Supp. 1134 (E.D.Pa.1993) (monastery); Grotke v. Canisius High School, 1992 WL 535400 1992 U.S.Dist.LEXIS 12299 (W.D.N.Y.1992) (parochial school); Lukaszewski v. Nazareth Hospital, 764 F.Supp. 57 (E.D.Pa.1991) (hospital); Scharon v. St. Luke's Episcopal Presbyterian Hospitals, 736 F.Supp. 1018 (E.D.Mo.1990) (hospital), affirmed, 929 F.2d 360 (8th Cir.1991); Cochran v. St. Louis Preparatory Seminary, 717 F.Supp. 1413 (E.D.Mo.1989) (seminary); Minker v. Baltimore Annual Conference of the United Methodist Church, 699 F.Supp. 954 (D.D.C.1988) (regional conference of the United Methodist Church), aff'd in part, remanded in part, 894 F.2d 1354 (D.C.Cir. 1990); Soriano v. Xavier University, 687 F.Supp. 1188 (S.D.Ohio 1988) (predominantly Catholic university); Ritter, 495 F.Supp. at 725 (predominantly Catholic college).
The law that has developed in this area, accordingly, is the product of plaintiffs' suing organizations that are arguably "religious institutions," but not necessarily so. As the Lukaszewski court noted,
An Establishment Clause violation is also less likely in this case than in Catholic Bishop because Nazareth is not an educational institution, but a hospital employing over 1,400 persons. Religious doctrine is a much less important factor in most hospital personnel decisions that it is in religious school decisions to hire and fire teachers. This distinction was acknowledged in Catholic Bishop where the Court exempted church-operated schools from the NLRA despite clear legislative history that non-profit hospitals were covered by the Act.
764 F.Supp. at 60. In the case at hand there can be no question but that the Temple is a religious institution.
A spectrum of factual scenarios for ADEA cases emerges from the reported cases. On the one hand there are temples and churches firing rabbis and priests, but apparently no ADEA suits have been filed because everyone understands that the ADEA does not extend to such situations, regardless of why such individuals may have been fired. The case closest to this scenario is Minker, where a vocational counselor, who was ordained as a minister, sued a conference of churches arguing that he was denied a pastoral position due to his age. The District Court held that it would be inappropriate for a court to entertain plaintiff's ADEA suit because plaintiff's dispute was "ecclesiastical" in nature. Slightly in from that point in the spectrum is Scharon, where a person with a pervasively religious job (a hospital chaplain) worked for a hospital that was not pervasively religious, and the act was held not to apply. On the other extreme, the ADEA obviously covers purely secular employees working for purely secular employers. The Lukaszewski and Stouch cases, which involve a Director of the Physical Plant for a hospital, and a chef, respectively, are examples of this end of the spectrum. As the Court noted in Stouch, "all of Stouch's duties ... were secular ... culinary demands, not church doctrine, will be subject to scrutiny." Stouch, 836 F.Supp. at 1144. Moving closer to the middle of the spectrum one finds that six of the ten reported cases involved lay teachers working for schools associated with religious organizations.
The undersigned recites all these cases, and identifies the above spectrum, only to point out that courts have been required to focus on the plaintiffs' roles, as opposed to the nature of the employer, largely because it was not apparent the degree to which these employers were truly religious institutions. *684 The more pervasively religious an institution is, the less religious the employee's role need be in order to risk first amendment infringement. Likewise, the less religious an organization, the more religious an employee's role need be in order to risk first amendment infringement. This logic is implicit in the only Eighth Circuit case to guide the undersigned, Scharon, 929 F.2d at 362-63, and the two district court cases from this district, Scharon, 736 F.Supp. at 1019, and Cochran, 717 F.Supp. at 1414. In the instant case, there is no question but that the Temple is a pervasively religious institution, and there is also no question but that plaintiff's job entailed some religious duties.
Implicit in this decision is the recognition that in Judaism certain issues that people of Christian or other faiths might find secular may be considered religious in nature. If the "chef" in the Stouch case had worked in a kosher kitchen at a synagogue, for example, the court may well have decided that case differently. Where one sits in the Temple, or how much one contributes to the Temple, or even when in the week one may use the Temple for religious or non-religious events, are all items involved in plaintiff's duties, and all may well involve religious matters in the context of the Temple here.
As a final note, the undersigned observes that the defendant in this case has approached the question of whether it was an "employer" under the ADEA as a "purely legal question." Defendant, accordingly, has buttressed the record with a minimum of affidavits and other factual evidence. This, defendant is entitled to do. This case does not present the typical motion for summary judgment, but is in fact addressed to the exercise of federal jurisdiction.[1] It is not enough for plaintiff to attempt to provide evidence that there is a genuine issue of fact regarding whether he had some secular duties or was fired for some secular reasons. Plaintiff must present sufficient evidence to demonstrate that there is a minimal risk of this case's trammelling upon the first amendment under the first tier of the Catholic Bishop test. In order for this Court to have jurisdiction over this case it is plaintiff's burden to demonstrate that his invoking the ADEA does not pose a serious constitutional question. Plaintiff did not meet his burden. The undersigned accordingly was obliged to engage in the second tier of analysis under Catholic Bishop and, in so doing, it became apparent that Congress failed to clearly express an affirmative intention that the ADEA apply to defendants such as the Temple here.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion for reconsideration [# 51] is denied.
IT IS FURTHER ORDERED that plaintiff's motion for leave to add an exhibit [# 52] is denied.[2]
NOTES
[1] The Grotke, Minker, and Ritter courts all addressed the question of whether the defendant was an "employer" under the Act as a Rule 12(b)(1) or 12(b)(2), Fed.R.Civ.P., question.
[2] Plaintiff's new exhibit duplicates Defendants' Exhibit A filed with the motion for summary judgment, except that it is missing a crucial page. Plaintiff's new exhibit thus adds nothing to the record.