**Dennis POWELL, Plaintiff,**

v.

**J. Francis STAFFORD, Archbishop, the Archdiocese of Denver, a corporation sole, Defendant.**

**Civ. A. No. 93–B–2240.**

United States District Court, D. Colorado.

Aug. 8, 1994.

Daniel F. Lynch, Daniel F. Lynch, P.C., Denver, CO, for plaintiff.

Laura Ann Wing, Samuel M. Ventola, Rothgerber, Appel, Powers & Johnson, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant J. Francis Stafford, Archbishop, the Archdiocese of Denver, a corporation sole (the Archdiocese), moves pursuant to Fed. R.Civ.P. 12(c) to dismiss plaintiff Dennis Powell's (Powell) complaint or, in the alternative, for summary judgment. Because the parties present materials outside the plead-

ings to support their positions, the Archdiocese's Rule 12(c) motion is treated as one for summary judgment under Fed.R.Civ.P. 56. The motion is fully briefed and orally argued. Jurisdiction rests upon 28 U.S.C. § 1331. For all the reasons set forth below, the Archdiocese's motion for summary judgment will be granted.

## I.

This is an employment discrimination case brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA). Powell was employed by the Archdiocese as a Roman Catholic theology teacher at Machebeuf Catholic High School (Machebeuf). Machebeuf does not exist as an entity separate from the Archdiocese. He alleges that the Archdiocese failed to renew his employment contract in violation of the ADEA. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ..." 29 U.S.C. § 623(a)(1).

The Archdiocese moves for summary judgment on the ground that it is not subject to the ADEA. Alternatively, the Archdiocese argues that the ADEA's application in this case violates the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution. It also contends that the newly enacted Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.*, bars Powell's claim.

## II.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The nonmoving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e).

## III.

This case turns on whether the ADEA can constitutionally be applied to the undisputed facts. It illustrates the tension between our Constitutional principles of freedom of religion and the national goal of eradicating age discrimination. The Archdiocese argues that the ADEA's enforcement here impermissibly infringes on its First Amendment religious freedoms. For purposes of this motion only, I assume that the Archdiocese is not otherwise exempt from the ADEA provisions.

■ I hold that the ADEA's application under the undisputed facts of this case would violate the Free Exercise and Establishment Clauses of the First Amendment. Accordingly, Powell's ADEA claim cannot stand as a matter of law.

The facts, with disputes resolved in Powell's favor, are as follows. As Machebeuf's Roman Catholic theology teacher, Powell was responsible for the instruction of Catholic high school students in Roman Catholic doctrine. He taught no other courses. Powell defines the teaching of theology as "the study of God as we know God and believe who God is". Powell often held his classes in Machebeuf's chapel because prayer was a component of his theology class. Before his employment at Machebeuf, Powell had been an ordained Catholic priest and attended the Maryknoll Seminary. However, in 1973, Powell petitioned for relief from his priestly vows. His petition was granted and he was

"laicized" by release from his priestly vows becoming once again a layman.

Powell was first employed to teach Roman Catholic theology at Machebeuf in 1980. His teaching contract was renewed annually for thirteen years, but he was not offered a teaching contract during the 1993–94 school year. Powell alleges that his employment was discontinued because of his age.

█ In their briefs, the parties dispute whether Powell's experience as a priest gave him superior qualifications. This dispute, however, does not preclude summary judgment. Indeed, it bolsters my conclusion that the ADEA's enforcement in this case violates the Archdiocese's First Amendment religious freedoms. To resolve judicially Powell's qualifications stemming from his priesthood would result in "excessive entanglement" with religion. *See, e.g., Rayburn v. General Conference of Seventh-day Adventists*, 772 F.2d 1164, 1169 (4th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

## IV.

The free exercise clause of the First Amendment prohibits the government's interference with the practice of religion while the establishment clause prevents government support of and entanglement with religion. *Houston v. Mile High Adventist Academy*, 846 F.Supp. 1449, 1454–55 (D.Colo. 1994). Application of the ADEA here contravenes both prohibitions.

## A.

█ Powell seeks a judgment requiring the Archdiocese to hire him to teach Roman Catholic theology. Alternatively, he seeks damages. *See* Complaint's "Prayer for Relief". Such relief would substantially burden and interfere with the Archdiocese's Free Exercise rights under the Constitution. *See, e.g., Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1357 (D.C.Cir.1990); *See also Maguire v. Marquette University*, 627 F.Supp. 1499, 1505 (E.D.Wis.1986), *aff'd in part and vacated in part on other grounds*, 814 F.2d 1213 (7th Cir.1987) (ordering the University theol-

ogy department to hire plaintiff violates the free exercise clause and impermissibly entangles government with religion). While there are no Tenth Circuit decisions addressing the issue before me, numerous other courts have considered the spectrum of factual scenarios in ADEA cases involving religious-affiliated organizations. The overriding theme is that the more pervasively religious the institution, the less religious the employee's role need be to risk First Amendment infringement. *Weissman v. Congregation Shaare Emeth*, 839 F.Supp. 680, 684 (E.D.Mo.1993). Conversely, the less religious an organization, the more religious an employee's role need be to risk First Amendment infringement. *Id.* In this case, Powell does not challenge Machebeuf's religious affiliation. And, significantly he does not contest that his teaching role was primarily religious in nature. He taught Roman Catholic theology exclusively and even held some of his classes in Machebeuf's chapel so that his students could pray as part of his class. There is no genuine dispute that Powell's duties were pervasively religious in nature.

█ Courts have consistently held that the ADEA does not apply in cases involving employees performing primarily religious functions. *See, e.g., Scharon v. St. Luke's Episcopal Presbyterian Hospitals*, 929 F.2d 360 (8th Cir.1991) (hospital chaplain); *Weissman*, 839 F.Supp. 680 (E.D.Mo.1993) (temple administrator); *Minker*, 894 F.2d 1354 (minister); *Cochran v. St. Louis Preparatory Seminary*, 717 F.Supp. 1413 (E.D.Mo.1989) (seminary faculty member). Here, the distinction between ADEA claims brought by an employee holding a secular position with an institution religious in nature and one with pervasively religious duties performed for a Catholic school is dispositive. The First Amendment precludes judicial resolution of employment decisions involving ministerial employees. *Welter v. Seton Hall University*, 128 N.J. 279, 608 A.2d 206, 214 (1992).

The Supreme Court also recognized this distinction in *National Labor Relations Board v. Catholic Bishop*, 440 U.S. 490, 505–07, 99 S.Ct. 1313, 1321–22, 59 L.Ed.2d 533 (1979). The Court exempted church-operated schools from the National Labor Relation

Act despite clear legislative history that non-profit hospitals were covered by the Act. *Id.* Similarly, in rejecting a minister's ADEA claim against his church on First Amendment grounds, the court, in *Minker v. Baltimore Annual Conference of United Methodist Church,* held that "whose voice speaks for the church is *per se* a religious matter". *Minker,* 894 F.2d at 1356–57. The court could not conceive of an area of inquiry less suited to secular judicial decision. *Id.* at 1357.

To support his argument that the ADEA's application here does not violate the First Amendment, Powell relies exclusively on cases in which the ADEA was held applicable to employees not charged with ministerial functions or involving defendants which were not religious organizations. *See Lukaszewski v. Nazareth Hosp.,* 764 F.Supp. 57 (E.D.Pa.1991) (director of plant operations); *Stouch v. Brothers of Order of Hermits of St. Augustine,* 836 F.Supp. 1134 (E.D.Pa.1993) (chef); *Geary v. Visitation of Blessed Virgin Mary Parish School,* 7 F.3d 324 (3rd Cir. 1993) (lay teacher); *Grotke v. Canisius High School of Buffalo,* 1992 WL 535400 (W.D.N.Y. April 13, 1992) (latin instructor); *Welter v. Seton Hall University,* 128 N.J. 279, 608 A.2d 206 (1992) (nuns performing non-ministerial functions for university); *Ritter v. Mount St. Mary's College,* 814 F.2d 986 (4th Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987) (assistant professor of education); *Soriano v. Xavier University Corp.,* 687 F.Supp. 1188 (S.D.Ohio 1988) (university operated by religious order). In particular, Powell argues that the reasoning in *DeMarco v. Holy Cross High School,* 4 F.3d 166 (2d Cir.1993) is equally applicable here. I disagree. In *Demarco,* the plaintiff was a lay teacher with certain religious duties whereas, here, Powell is a ministerial employee whose duties are exclusively religious. Significantly, Powell cannot point to a single decision in which the ADEA has been applied to theology instructors or individuals with religious duties as pervasive as his.

Powell, unlike the plaintiffs in the cited cases, was a ministerial or spiritual employee. *See Rayburn,* 772 F.2d at 1169 (holding in a Title VII context that if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered 'clergy'.) (citation omitted); *Alicea v. New Brunswick Theological Seminary,* 128 N.J. 303, 608 A.2d 218, 223 (1992) (seminary's associate professor of theology performed ministerial function). Powell was not denied employment teaching a secular subject. Simply put, there is no teaching position more closely tied to a Roman Catholic school's religious character than teaching Roman Catholic doctrine. *Maguire,* 627 F.Supp. at 1504. I conclude that the Archdiocese's free exercise rights are substantially burdened by application of the ADEA under the circumstances here.

However, to preclude the application of the ADEA in this case, not only must the Archdiocese's free exercise rights be substantially burdened by the ADEA's application, but the government must also lack compelling justification for imposing on this fundamental right. Congress recently restored the application of the compelling interest standard for all cases in which the free exercise of religion is substantially burdened. *See* Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (RFRA). The RFRA "applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993". 42 U.S.C. § 2000bb–3. RFRA was enacted in response to the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) in which the Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion. *See* 42 U.S.C. § 2000bb–1(a, b).

Here, although the government clearly has an interest in eradicating age discrimination, it is not compelling in light of the fundamental right of a church to determine who may be trusted with the spiritual function of teaching its ecclesiastical doctrine under the free exercise clause. *Maguire,* 627 F.Supp. at 1503; *see also Gonzalez v. Roman Catho-*

*lic Archbishop,* 280 U.S. 1, 16, 50 S.Ct. 5, 7, 74 L.Ed. 131 (1929) ("Decisions of church authorities concerning the essential qualification of [clergy] and who possess them ... although affecting civil rights, are accepted in litigation before the secular courts as conclusive ..") Contrary to Powell's suggestion, the balance of values does not favor the government's interference with the Archdiocese's decision as to the appropriate individual to teach its theology at Machebeuf. RFRA supports summary judgment in favor of the Archdiocese.

■ Powell further contends that the First Amendment does not apply to his claim unless the Archdiocese proves that a "religious reason" caused his termination. In light of my conclusion that Powell was a ministerial employee, this argument is without merit. Indeed, all of the decisions addressing this issue have concluded that religious organizations have a *per se* right to select its ministerial employees. *Minker,* 894 F.2d at 1356–57; *see also Rayburn,* 772 F.2d at 1167–68 ("The right to choose ministers without government restriction underlies the well-being of the religious community, for perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large") (citation omitted). Accordingly, there is no requirement that the Archdiocese demonstrate a "religious reason" for Powell's termination.

Moreover, even assuming such a requirement, the Archdiocese states that Powell's employment was discontinued for two reasons unrelated to his age: 1) a need for fewer teachers, and 2) Powell's skills, abilities and qualifications were deemed less desirable than other Machebeuf faculty members. Archdiocese's Interrogatory Answer number 3, pp. 4–5. Clearly, the Archdiocese's second reason for Powell's termination is a "religious reason" sufficient to implicate the First Amendment.

### B.

The Establishment clause also bars Powell's ADEA claim. Powell again argues that neither of the reasons for his termination are religious in nature and, therefore, the ADEA's application in this case would not require excessive government entanglement with religion. I disagree.

■ To determine the validity of a statute under the Establishment Clause of the Constitution, I apply the three-part test set out in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 49 L.Ed.2d 745 (1971), (sporadically and inconsistently applied but never overruled).

> ... [F]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ... [and third] the statute must not foster 'an excessive government entanglement with religion'.

*Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111 (citations omitted). There is no question that the ADEA meets the first two of these tests. The issue is then whether applying the ADEA to the undisputed facts of this case would cause "excessive government entanglement with religion".

Under *Lemon,* entanglement is measured by the "character and purposes" of the institution affected, the nature of the benefit or burden imposed, and the "resulting relationship between the government and the religious authority." *Rayburn,* 772 F.2d at 1170. In this case, the institution affected is a Catholic church-affiliated school. As noted in *Lemon* and again in *Catholic Bishop,* "... church-related schools give rise to entangling church-state relationships of the kind the Religion Clause sought to avoid ...". *Lemon,* 403 U.S. at 616, 91 S.Ct. at 2113; *Catholic Bishop,* 440 U.S. at 503, 99 S.Ct. at 1320. The burden imposed here would be significant. *See generally Rayburn,* 772 F.2d at 1170 n. 7 (the risk of entanglement is not limited to situations where there is state assistance or sponsorship of a religious institution).

Powell requests secular judgment as to the appropriate individual to teach theology at Machebeuf contrary to the Archdiocese's judgment. The dangers of constitutionally proscribed entanglement are manifest where, as here, the ADEA's application to the Arch-

diocese's hiring policy for its religious instructors is subject to continuing and comprehensive government surveillance. *See generally Catholic Bishop,* 440 U.S. at 502, 99 S.Ct. at 1319; *Lemon,* 403 U.S. at 619, 91 S.Ct. at 2114. It is particularly offensive that this court's involvement in the hiring decision of Machebeuf's theology instructors necessarily entangles this court with questions of religious doctrine and the procedure by which a Catholic high school selects its theology faculty. This concern is heightened in light of the Archdiocese's contention that Powell's employment was discontinued because his skills, abilities and qualifications were deemed less desirable than other Machebeuf faculty members.

Compelled by the First Amendment, the Supreme Court adheres to the principle that federal courts should not venture into purely ecclesiastical waters and are bound by the decision of the highest church authority recognized by the parties to the dispute. *Houston,* 846 F.Supp. at 1454–55. Thus, the determination as to who is an appropriate person to teach Roman Catholic theology at Machebeuf is for the Archdiocese, not the government through the ADEA or this secular court. Any involvement by me concerning the Archdiocese's decision on this question constitutes an unprecedented and impermissible entanglement with religious authority.

I conclude that the relationship between Powell and the Archdiocese is so pervasively religious that it is impossible to engage in an age-discrimination inquiry without impermissible offense to the Constitution's free exercise and establishment provisions. *Cf. Demarco,* 4 F.3d at 172.

Accordingly, IT IS ORDERED that:

a) The Archdiocese's motion for summary judgment is GRANTED;

b) Powell's complaint is DISMISSED with prejudice; and

c) The Archdiocese is awarded its costs.