John **LUKASZEWSKI**

v.

**NAZARETH HOSPITAL.**

Civ. A. No. 90–6562.

United States District Court, E.D. Pennsylvania.

May 7, 1991.

---

Patrick M. McHugh, Philadelphia, Pa., for plaintiff.

A. James Johnston, Post & Schell, P.C., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiff John Lukaszewski filed this civil action asserting claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Pennsylvania Human Relations Act, 43 P.S.A. § 951 *et seq.* ("PHRA"), and state common law. Defendant moved to dismiss, or in the alternative for summary judgment, on each count. That motion was unopposed with respect to the PHRA and common law claims. The court denied defendant's motion to dismiss the ADEA claim from the bench and now states its reasons for doing so.

## I. FACTS

On this motion to dismiss (or for summary judgment), all allegations in the complaint are assumed true, all disputed facts and inferences are construed in the light most favorable to the plaintiff.

Nazareth Hospital [hereinafter "Nazareth"] is a nonprofit, 381–bed community hospital with approximately 1400 employees. It was founded by the Congregation of the Sisters of the Holy Family of Nazareth and is open to the general public. Nazareth subscribes to principles promulgated by the Catholic Hospital Association and operates in accordance with Roman Catholic doctrine. Sister Therese is the President of Nazareth Hospital; she is responsible for managing the hospital's workforce, including decisions over hiring and firing. *See* Declaration of Sister Therese, Def.Br. at Ex.B.

Lukaszewski was employed by Nazareth as Director of Plant Operations from 1976 until his termination on June 25, 1990. His duties included overseeing the operation of the physical facilities of the hospital and supervising 19 to 22 employees. Lukaszewski claims he was terminated because Nazareth wanted to save money by replacing him with a younger person paid a lower salary. Nazareth maintains that Lukaszewski was fired because he used racially offensive remarks in the presence of others, harassed subordinates, and mismanaged the duties of his position.

## II. DISCUSSION

The issue before the court is whether application of the ADEA to a religious institution such as Nazareth Hospital vio-

lates the Religion Clauses of the First Amendment. They provide that:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *.

Congress enacted the ADEA in 1967 to "promote employment of older persons based on their ability rather than age" and to "prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b). Enforcement of the ADEA lies in the first instance with the Equal Employment Opportunity Commission ("EEOC"); it is charged with eliminating discriminatory practices through informal methods of conciliation, conference, and persuasion. *Id.* at 626(a) and (d). Sixty days after charges have been filed with the EEOC, an individual may bring a civil action in district court. *Id.* at 626(d).

Under the ADEA, it is unlawful for an "employer"

> to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.

29 U.S.C. § 623(a). The term "employer" is defined as "a person engaged in an industry affecting commerce who has twenty or more employees" for a specified period of time. 29 U.S.C. § 630(b). There is no dispute that Nazareth is an "employer" as defined by the Act. However, Nazareth claims that it is exempt from ADEA liability because to hold otherwise would violate the Establishment Clause.

Relying primarily on *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), Nazareth contends that it should be exempt from the ADEA because adjudication of Lukaszewski's claim would unconstitutionally call into question its religious principles and lead to excessive government entanglement in church affairs. In *Catholic Bishop*, two Catholic schools challenged the NLRB's jurisdiction, under the National Labor Relations Act ("NLRA"), to certify bargaining units of lay faculty members and order the schools to bargain in good faith. In addressing the scope of the NLRB's jurisdic-

tion, the Supreme Court stated that the statute should be interpreted to avoid a constitutional violation if an alternative construction were available. The Court stated:

> In keeping with the Court's prudential policy it is incumbent on us to determine whether the Board's exercise of its jurisdiction here would give rise to serious constitutional questions. If so, we must first identify the "affirmative intention of the Congress clearly expressed" before concluding that the Act grants jurisdiction.

*Id.* at 501, 99 S.Ct. at 1319 (quoting *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21–22, 83 S.Ct. 671, 677–78, 9 L.Ed.2d 547 (1963)).

The Court stated that the exercise of NLRB jurisdiction "will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission." *Id.* 440 U.S. at 502, 99 S.Ct. at 1320. In addition, the Court noted that exercise of NLRB jurisdiction raises special concern when it involves teachers who are responsible for the interpretation and communication of religious doctrine. Accordingly, the Court concluded that the NLRB's exercise of jurisdiction "presents a significant risk that the First Amendment will be infringed." *Ibid.*

The Court then considered whether Congress really intended to extend NLRB jurisdiction to employees of religious institutions and concluded that such an expression of congressional intent was absent from the legislative history. The Court, declining to construe the statute in a manner raising constitutional difficulties, held that the NLRB did not have statutory jurisdiction over religious school faculties.

■ Under the standards set forth in *Catholic Bishop*, Nazareth is not entitled to an exemption from the ADEA. There is little risk that adjudication of plaintiff's ADEA claim will lead to excessive governmental entanglement in Nazareth's affairs or call into question the hospital's religious tenets. In an ADEA proceeding, once plaintiff has established a prima facie case

of age discrimination, the burden shifts to the defendant to articulate "some legitimate nondiscriminatory reason for the employee's rejection." *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1395 (3d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). The burden then shifts back to plaintiff to prove that the defendant's reason is merely a pretext for illegal discrimination. *Smithers v. Bailar*, 629 F.2d 892, 896 (3d Cir. 1980). The primary trial issue in this case will be whether Nazareth discriminated against Lukaszewski on the basis of age or terminated him for some other, nondiscriminatory reason.

Nazareth has alleged that Lukaszewski was terminated primarily because he directed racial epithets toward other employees of the hospital, including persons under his supervision, in violation of Catholic religious tenets. Nazareth fears that judicial inquiry into its decision to terminate Lukaszewski will involve evaluation of the hospital's religious philosophy. That concern is unfounded because at no point in this litigation will the validity of church doctrine be considered. Regardless of the church's religious principles, the use of racial slurs or racial harassment is a legitimate, nondiscriminatory reason for firing an employee. The trial will determine if Lukaszewski was discriminated against by reason of his age or terminated because he used offensive language. The wisdom of Nazareth's policy against racial slurs and harassment will not be at issue.

■ The government's intervention in age discrimination cases presents less danger of excessive entanglement than the NLRB's supervision of labor relations. Once a labor union has been certified, the NLRB is continuously involved in the enforcement of collective bargaining agreements and resolution of labor disputes. In age discrimination cases, the EEOC's authority extends only to the investigation and attempted conciliation or resolution of individual or group complaints; it is limited

in time and scope. The EEOC is not authorized to exercise such continued regulatory activity. The EEOC's case-by-case inquiry into employee complaints of age discrimination is not administrative entanglement barred by the Establishment Clause. As the Court has stated,

> routine regulatory interaction which involves no inquiry into religious doctrine, no delegation of state power to a religious body, and no "detailed monitoring and close administrative contact" between secular and religious bodies, does not of itself violate the nonentanglement command.

*Hernandez v. Commissioner*, 490 U.S. 680, 697, 109 S.Ct. 2136, 2147, 104 L.Ed.2d 766, 785 (1989) (citations omitted); *see also Jimmy Swaggart Ministries v. Board of Equalization*, 493 U.S. 378, ——, 110 S.Ct. 688, 698–99, 107 L.Ed.2d 796, 813 (1990).

An Establishment Clause violation is also less likely in this case than in *Catholic Bishop* because Nazareth is not an educational institution, but a hospital employing over 1400 persons. Religious doctrine is a much less important factor in most hospital personnel decisions than it is in religious school decisions to hire and fire teachers. This distinction was acknowledged in *Catholic Bishop* where the Court exempted church-operated schools from the NLRA despite clear legislative history that non-profit hospitals were covered by the Act. *Catholic Bishop* and *Cochran v. St. Louis Preparatory Seminary*, 717 F.Supp. 1413 (E.D.Mo.1989), both of which concerned schools, are distinguishable.

Cases holding that the Religion Clauses of the First Amendment bar discrimination actions by the clergy are also inapposite. *See Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354 (D.C.Cir.1990); *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972). Lukaszewski was a secular employee; his responsibilities did not include church administration or religious matters.

As to the second element of the *Catholic Bishop* test, the ADEA legislative history

suggests that Congress intended to extend coverage to religious institutions. This congressional purpose can be derived from the structure of Title VII because "[t]he substantive 'prohibitions of the ADEA were derived *in haec verba* from Title VII.'" *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir.1983) (quoting *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 871–72, 55 L.Ed.2d 40 (1978)). Title VII expressly exempts religious institutions from its general prohibition against employment discrimination based on religion. *See* 42 U.S.C. § 2000e–1. A religious organization remains subject to the provisions of Title VII prohibiting discrimination on the basis of race, color, gender, or national origin, so long as it qualifies as an "employer." *See Martin v. United Way of Erie County*, 829 F.2d 445, 449 (3d Cir.1987); *Rayburn v. General Conference of Seventh–Day Adventists*, 772 F.2d 1164, 1166 (4th Cir. 1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986) (citing cases from other circuits). The fact that Congress subjected religious organizations to most of the requirements of Title VII strongly suggests that Congress also intended to extend ADEA coverage to such institutions. The statutory provisions defining the scope of coverage are virtually identical in the two statutes, *compare* 42 U.S.C. § 2000e(b) *with* 29 U.S.C. § 630(b); *see also Martin*, 829 F.2d at 447–448. There is no legislative history suggesting that Congress intended the ADEA's jurisdiction to differ from Title VII's.

█ Nazareth's motion suggests that application of the ADEA to religious institutions also violates the Free Exercise Clause. However, that claim is precluded by *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), holding that neutral statutes of general applicability do not violate the Free Exercise Clause unless directed specifically at religious practices. *Smith* applies to civil as well as criminal statutes. *See Salvation Army v. Department of Community Affairs*, 919 F.2d 183, 196 (3rd Cir.1990). The ADEA is a neutral law of general applicability to any employer with greater than twenty employees. It does not target or discriminate against religious organizations in any way. Consequently, the Free Exercise Clause is not implicated.

Nazareth's motion for summary judgment on the ADEA claims of the complaint is denied. Summary judgment is granted on Counts III and IV as unopposed.

An appropriate Order follows.