Guy DeMARCO, Plaintiff–Appellant,

v.

HOLY CROSS HIGH SCHOOL,
Defendant–Appellee.

No. 1052, Docket 92–7914.

United States Court of Appeals,
Second Circuit.

Argued Feb. 24, 1993.

Decided Sept. 1, 1993.

Jerome J. Liebman, Rockville Centre, NY, for plaintiff-appellant.

Brian P. Neary, Huntington, NY (Faruolo, Caputi, Weintraub & Neary), for defendant-appellee.

Karen M. Moran, Washington, DC (U.S. E.E.O.C., Samuel A. Marcosson, Donald R.

Livingston, Gwendolyn Young Reaves, Vincent J. Blackwood, of counsel), filed a brief amicus curiae on behalf of E.E.O.C.

Before: WALKER and McLAUGHLIN, Circuit Judges, and GRIESA, Chief District Judge.*

WALKER, Circuit Judge:

This appeal raises the question of whether the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621–34, applies to an action brought by a lay teacher against his parochial school employer.

## BACKGROUND

Beginning in September of 1985, plaintiff-appellant Guy DeMarco was employed as a math teacher by defendant-appellee Holy Cross High School, a Catholic parochial school which has in excess of twenty employees. Although a layperson, DeMarco had certain religious duties, including leading his students in prayers and taking them to Mass. DeMarco was employed under annual contracts renewable each year for five years, after which time he was to become eligible for tenure. In April of 1990, near the end of his fifth year of employment, Holy Cross informed DeMarco that he would not be offered a contract for the upcoming year. At the end of that school year, DeMarco left the employment of Holy Cross. He then filed a charge of age discrimination with the Equal Employment Opportunity Commission (the "EEOC").

On April 22, 1991, the EEOC issued a determination that Holy Cross had not violated the ADEA. On July 12, 1991, DeMarco initiated the instant action in the United States District Court for the Eastern District of New York (Spatt, J.). On October 24, 1991, Holy Cross moved for summary judgment, arguing that DeMarco was dismissed for reasons unrelated to his age, including failure to begin his classes with prayer and failure to attend Mass with his students. Holy Cross also argued that the district court should not reach the merits of DeMar-

co's age discrimination claims because, as a religious institution, it was statutorily exempt from the ADEA's anti-discrimination provisions. The district court agreed with Holy Cross's statutory argument and dismissed the complaint, holding that the ADEA should not be construed to apply to parochial schools, at least with respect to employees with some religious duties, such as teachers required to lead students in prayer. *DeMarco v. Holy Cross High Sch.,* 797 F.Supp. 1142, 1151–52 (E.D.N.Y.1992).

## DISCUSSION

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). The ADEA defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees...." *Id.* at § 630(b). Neither the ADEA nor its legislative history explicitly states whether religious institutions are "employers" within the meaning of § 630(b). *See* H.R.Rep. No. 805, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.C.C.A.N. 2213; S.Rep. No. 723, 90th Cong., 1st Sess. (1967).

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion[ ]...." U.S. Const. amend. I. The Supreme Court has developed a three-part test for analyzing the constitutionality of legislation under the Establishment Clause: "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; [and] finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (citation omitted).

Holy Cross contends, as it did successfully in the district court, that application of the

* Hon. Thomas P. Griesa, *Chief Judge,* United States District Court for the Southern District of New York, sitting by designation.

ADEA to DeMarco's claims would create a substantial risk of violation of the excessive entanglement prohibition of the Establishment Clause, and thus that we should construe the § 630(b) definition of "employer" to exclude religious institutions in cases brought by lay employees with religious duties like DeMarco.

Our analysis of the ADEA in this case is guided by principles of statutory construction enunciated by the Supreme Court in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979). In *Catholic Bishop*, the Supreme Court examined whether the National Labor Relations Act (the "NLRA") authorized the National Labor Relations Board (the "NLRB") to regulate labor relations between lay faculty and their parochial school employers. The *Catholic Bishop* Court applied a test which looks initially to whether application of the statute at issue would raise serious First Amendment concerns. *See id.* at 501, 99 S.Ct. at 1319. If there is a serious risk of constitutional violation, a court must then determine whether Congress expressed an affirmative intention to apply the statute at issue to religious institutions. *See id.* If it does not find such an expression of intent, a court presumes Congress did not intend the statute to apply to the case at issue. *See id.* at 504–06, 99 S.Ct. at 1320–21.

The *Catholic Bishop* Court concluded that NLRB supervision of teacher-parochial school labor relations risked excessive entanglement of government with religion in violation of the Establishment Clause. *See id.* at 504, 99 S.Ct. at 1321. The Court focused upon the likelihood that resolution by the NLRB of improper labor practice complaints would "necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission." *See id.* at 502; *see generally* L.H. Tribe, *American Constitutional Law* § 14–11, at 1227–28 (2d ed. 1988) (discussing case law concerning administrative entanglement between government and religious institutions). In the absence of an affirmative expression of Congressional intent to apply the NLRA to religious schools, the Court found that the stat-

ute did not apply. *See* 440 U.S. at 506–07, 99 S.Ct. at 1321–22.

In the present case, Judge Spatt held that the governing standard of statutory construction compelled a conclusion like that reached in *Catholic Bishop*, namely, that the ADEA did not apply to DeMarco's claims. *See DeMarco*, 797 F.Supp. at 1151–53. The district court was convinced both that application of the ADEA to the instant case would give rise to an untoward risk of excessive government entanglement with religion and that Congress did not express an affirmative intent to apply the ADEA to religious institutions. *See id.* We disagree with both aspects of this analysis.

The majority of courts considering the issue have determined that application of the ADEA to religious institutions generally, and to lay teachers specifically, does not pose a serious risk of excessive entanglement. *See, e.g., Ritter v. Mount St. Mary's College*, 814 F.2d 986, 988 n. 1 (4th Cir.) (discussing unpublished decision permitting suit by lay professor against religious university), *cert. denied*, 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987) (overruled on other grounds by *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990)); *Soriano v. Xavier Univ. Corp.*, 687 F.Supp. 1188, 1189 (S.D.Ohio 1988) (permitting suit by lay employee of religious university); *Grotke v. Canisius High Sch. of Buffalo*, No. CIV–90–1057S, 1992 WL 535400, 1992 U.S.Dist. LEXIS 12299 (W.D.N.Y. Apr. 11, 1992) (permitting suit by lay teacher against parochial school); *see also Lukaszewski v. Nazareth Hosp.*, 764 F.Supp. 57, 60 (E.D.Pa. 1991) (permitting suit by lay employee of religious hospital; but distinguishing cases involving educational institutions by noting that religious doctrine is more important factor in function of parochial schools than in function of religious hospitals).

■ These courts have recognized an important distinction between the ongoing government supervision of all aspects of employment required under labor relations statutes like the NLRA and the limited inquiry required in anti-discrimination disputes. While the NLRB is "continuously involved in the enforcement of collective bargaining agree-

ments and resolution of labor disputes," *id.; see also Catholic Bishop,* 440 U.S. at 503, 99 S.Ct. at 1320 (noting that nearly everything that goes on in a school is a term and condition of employment, potentially subject to NLRB review), ADEA actions do not require extensive or continuous administrative or judicial intrusion into the functions of religious institutions. The sole question at issue in an ADEA case is whether the plaintiff was unjustifiably treated differently because of his age. *See, e.g., Lukaszewski,* 764 F.Supp. at 60 ("In age discrimination cases, the EEOC's authority extends only to the investigation and attempted conciliation or resolution of individual or group complaints; it is limited in time and scope."); *Soriano,* 687 F.Supp. at 1189 (noting "narrow focus of the ADEA"). The Supreme Court has stated that "routine regulatory interaction which involves no inquiries into religious doctrine, no delegation of state power to a religious body, and no 'detailed monitoring and close administrative contact' between secular and religious bodies, does not of itself violate the [Establishment Clause's] nonentanglement command." *Hernandez v. Commissioner,* 490 U.S. 680, 696–97, 109 S.Ct. 2136, 2147–48, 104 L.Ed.2d 766 (1989) (citations omitted). Application of the ADEA to the case at bar requires just such routine regulatory interaction between government and a religious institution.

The district court was convinced that application of the test articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), as required in most ADEA actions, *Kirschner v. Office of the Comptroller of the City of New York,* 973 F.2d 88, 91–92 (2d Cir.1992), would give rise to Establishment Clause concerns. *DeMarco,* 797 F.Supp. at 1150, 1151–52. We disagree.

■ Under the rule of *McDonnell Douglas,* when an employee establishes a *prima facie* discrimination claim, the burden shifts to the employer to proffer a legitimate nondiscriminatory reason for the challenged employment action. *See* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer contends that its action was motivated by a reason other than age, the burden of production then shifts back to the employee to prove that the

articulated purpose is a mere pretext for discrimination. *See id.* at 804–05, 93 S.Ct. at 1825–26; *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The Supreme Court recently held, in a case brought under Title VII of the Civil Rights Act of 1964, that the mere fact that a defendant proffers a false reason for a challenged employment action does not necessarily establish liability. Proof that the employer has provided a false reason for its action permits the finder of fact to determine that the defendant's actions were motivated by an improper discriminatory intent, but does not compel such a finding. *See Saint Mary's Honor Center v. Hicks,* —— U.S. ——, —— 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993).

Supreme Court precedents preclude the government from serving as the arbiter of the truthfulness or validity of religious beliefs. *See, e.g., Employment Div., Dep't of Human Resources v. Smith,* 494 U.S. 872, 886–87, 110 S.Ct. 1595, 1604–05, 108 L.Ed.2d 876 (1990) (religious beliefs are susceptible to neither law nor logic); *Hernandez,* 490 U.S. at 699, 109 S.Ct. at 2149 (court may not question validity of an individual's religious beliefs or practices); *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981) ("Courts are not arbiters of scriptural interpretation.").

■ The district court reasoned that, where employers proffered religious reasons for challenged employment actions, application of the *McDonnell Douglas* test would require "recurrent inquiry as to the value or truthfulness of church doctrine," thus giving rise to constitutional concerns. *DeMarco,* 797 F.Supp. at 1151–52; *accord Geary v. Visitation of Blessed Virgin Mary Parish Sch.,* Civ. A. No. 92–5769, 1992 WL 392599, at *2 (E.D.Pa. Dec. 18, 1992) (following *DeMarco*); *see also Cochran v. Saint Louis Preparatory Seminary,* 717 F.Supp. 1413, 1416 (E.D.Mo.1989). However, in applying the *McDonnell Douglas* test to determine whether an employer's putative purpose is a pretext, a fact-finder need not, and indeed should not, evaluate whether a defendant's

stated purpose is unwise or unreasonable. Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action. *See, e.g., Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir.1988) (non-discriminatory reason tendered for employer's conduct "need not be well-advised, but merely truthful"). The pretext inquiry thus normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination. *See, e.g., Sabree v. United Bhd. of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 404 (1st Cir.1990) (*post hoc* rationalization of actions will not suffice to rebut plaintiff's *prima facie* case; citing cases); *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014–15 (2d Cir. 1980) (pretext may be established where policy applied to black plaintiff was not applied to whites), *cert. denied,* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981); *Jolly v. Northern Telecom, Inc.,* 766 F.Supp. 480, 494 (E.D.Va.1991) (evidence adduced that non-discriminatory rule purportedly applied to plaintiff was "alibi" tailored to justify discrimination). Thus, in those cases where a defendant proffers a religious purpose for its allegedly discriminatory employment action, a plaintiff will usually be able to challenge as pretextual the employer's justification without calling into question the value or truthfulness of religious doctrine.

■ However, in an ADEA or Title VII case, a plaintiff may be able to put into question the genuineness of the employer's putative non-discriminatory purpose by arguing that the stated purpose is implausible, absurd or unwise. *See Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1708, 123 L.Ed.2d 338 (1993); *Dister,* 859 F.2d at 1116; *see also Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1564 (11th Cir.1987) (Title VII case; "implausibility" of alleged reason sufficient to create genuine issue of material fact); *Lieberman v. Gant,* 630 F.2d 60, 65 (2d Cir.1980) (Title VII case; asserted "neutral" reason might be "so

ridden with error that defendant could not honestly have relied upon it"). We recognize that such a plausibility inquiry could give rise to constitutional problems where, as in the case at bar, a defendant proffers a religious purpose for a challenged employment action.

■ Our decision in *Catholic High Sch. Ass'n of the Archdiocese of New York v. Culvert,* 753 F.2d 1161 (2d Cir.1985), provides some guidance on this matter. At issue in *Culvert* was a New York labor relations statute which was substantively similar to the NLRA but, unlike the federal statute, expressly applied to religious associations. *See id.* at 1163. The *Culvert* court held that, where a religious school argued that a challenged labor action was motivated by a religious purpose, the state labor relations board could not inquire into whether a church held a particular belief or whether a claimed doctrinal position was valid or correct. *See id.* at 1168. The type of inquiry we found constitutionally violative in *Culvert* is close to the type of inquiry that could arise if an ADEA plaintiff were to raise a plausibility challenge to an employer's putative religious justification for an employment decision. However, this Establishment Clause concern does not lead us to hold that the ADEA does not apply to the case at bar. Rather, it requires us only to conclude that ADEA plaintiffs may not challenge the plausibility of putative religious purposes. A fact-finder will necessarily have to presume that an asserted religious motive is plausible in the sense that it is reasonably or validly held.

Holy Cross relies in part upon cases that hold that the ADEA is inapplicable to claims brought by members of the clergy against their religious employers. *See, e.g., Scharon v. Saint Luke's Episcopal Presbyterian Hosp.,* 929 F.2d 360, 363 (8th Cir.1991); *see also Minker v. Baltimore Annual Conference of United Methodist Church,* 894 F.2d 1354, 1356–58 (D.C.Cir.1990). These cases are inapposite, since each one deals with the pervasively religious relationship between a member of the clergy and his religious employer. *Cf. Rayburn v. General Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1170–71 (4th Cir.1985) (Title VII case; distinguishing

between personnel decisions involving selection of spiritual leaders—which are not subject to governmental inquiry—and decisions involving secular teachers in church approved schools, which are not beyond government inquiry), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

There may be cases involving lay employees in which the relationship between employee and employer is so pervasively religious that it is impossible to engage in an age-discrimination inquiry without serious risk of offending the Establishment Clause. This is not such a case. To be sure, an affidavit submitted by Brother William Damato adverts to DeMarco's general failure to fulfill the spiritual mission of Holy Cross. *See* Reply Affidavit of Brother William Damato. However, the references to Holy Cross's religious mission are linked to two very specific allegations: that DeMarco failed to attend Mass and to lead his students in prayers. Given that the religious duties that DeMarco allegedly failed to carry out are easily isolated and defined, we are confident that the able district judge will be able to focus the trial upon whether DeMarco was fired because of his age or because of failure to perform religious duties, and that this can be done without putting into issue the validity or truthfulness of Catholic religious teaching.

In *Culvert,* we held that the First Amendment does not permit a court to order a religious school to reinstate a teacher upon a mere showing that an unlawful motive played a role in a challenged employment action. *See* 753 F.2d at 1169. Rather, the court must find that the unlawful motive was a decisive, or "but for," cause of the dismissal of the teacher. *See id.* The *Culvert* court was concerned that ordering the equitable remedy of reinstatement would create excessive entanglement where a defendant would otherwise have discharged a plaintiff for religious reasons even absent its improper motives. *See id.* ("Were the Board allowed to apply an 'in part' test in addressing an asserted religious motive, an order based on such a finding would violate the First Amendment."); *see also NLRB v. Transportation Mgmt. Corp.,* 462 U.S. 393, 401–04,

103 S.Ct. 2469, 2474–76, 76 L.Ed.2d 667 (1983) (applying "but for" causation test to all NLRA cases).

This constitutional limitation is of no moment in the ADEA context because the ADEA applies only where plaintiffs establish that age-discriminatory animus was the "but for" cause of the challenged employment action. *See, e.g., Kirschner,* 973 F.2d at 91 n. 2; *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568–69 (2d Cir.1989). We note that Title VII was recently amended to provide for certain limited relief where a plaintiff makes a showing that an unlawful intent was a motivating factor, whether decisive or not, in a challenged action. *See* 42 U.S.C. § 2000e–2(m). However, the amended statute still requires proof of "but for" causation for imposition of the equitable remedy of reinstatement. *See id.* at § 2000e–5(g)(2)(B)(ii). We see no basis for concluding that the new Title VII standard applies to the ADEA, since Congress could have amended the ADEA along with Title VII, but did not. In any event, application of the new Title VII standard in a case like the one at bar would probably present no constitutional problem since proof of "but for" causation is still required for imposition of the equitable remedy of reinstatement under Title VII.

We thus conclude that application of the ADEA to the case at bar does not pose a serious risk of violating the non-entanglement command and hold, pursuant to *Catholic Bishop,* that the ADEA applies to DeMarco's claims.

Even if this case did present serious entanglement concerns, we would still find the ADEA applicable under the reasoning of *Catholic Bishop* because, unlike the district court, we are convinced that Congress implicitly expressed an intention to apply the ADEA to religious institutions. As the *Lukaszewski* court pointed out, a "congressional purpose [to apply the ADEA to religious institutions] can be derived from the structure of Title VII because 'the substantive "prohibitions of the ADEA were derived *in haec verba* from Title VII." ' " *Lukaszewski,* 764 F.Supp. at 61 (quoting *EEOC v. Zippo Mfg. Co.,* 713 F.2d 32, 38 (3d Cir.1983) (quoting *Lorillard, Div. of Loew's Theaters, Inc. v.*

*Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)) (brackets removed to conform with original)). Indeed, the provisions defining the scope of coverage of the two statutes are very similar. *Compare* 42 U.S.C. § 2000e(b) *with* 29 U.S.C. § 630(b); *see also Lukaszewski,* 764 F.Supp. at 61.

■ Title VII expressly exempts certain religious institutions from its prohibitions upon discrimination based on religion. *See* 42 U.S.C. § 2000e–1(a) ("This subchapter shall not apply ... to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion...."). However, religious institutions that otherwise qualify as "employer[s]" are subject to Title VII provisions relating to discrimination based on race, gender and national origin. *See Martin v. United Way of Erie County,* 829 F.2d 445, 449 (3d Cir.1987) (discussing ADEA, as well as Title VII); *Rayburn,* 772 F.2d at 1167; *Lukaszewski,* 764 F.Supp. at 61. As several courts have noted, the legislative history of Title VII makes clear that Congress formulated the limited exemptions for religious institutions to discrimination based on religion with the understanding that provisions relating to non-religious discrimination would apply to such institutions. *See, e.g., Martin,* 829 F.2d at 449; *Rayburn,* 772 F.2d at 1166. Given that Congress intended to apply Title VII to religious institutions, and that Congress modelled the ADEA's coverage upon that of Title VII, we are convinced that they also intended to apply the ADEA to such institutions.

We have considered Holy Cross's remaining arguments and find them to be without merit.

### CONCLUSION

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.