Karen STRAUSS, Plaintiff,

v.

MICROSOFT CORPORATION,
Defendant.

No. 91 Civ. 5928 (SWK).

United States District Court,
S.D. New York.

July 6, 1994.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City by Julian R. Birnbaum and Michael B. Ranis, for plaintiff.

Sullivan & Cromwell, New York City by John F. Cannon and Julie B. Crockett, for defendant.

## *MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

On February 22, 1993, the Court issued a Memorandum Opinion and Order denying defendant Microsoft Corporation's ("Microsoft") motion for partial summary judgment dismissing plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law § 290 *et seq.* In light of a recent Supreme Court decision addressing plaintiff's burden of proof in Title VII cases, *see St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), Microsoft now renews its motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(b). For the reasons set forth below, Microsoft's motion is denied.

### BACKGROUND

As the facts are fully set forth in the February 22, 1993 Opinion, they are only briefly summarized below.

Microsoft, a company engaged in the development and sale of computer software, publishes a journal entitled *Microsoft Systems Journal* (the "Journal"). The Journal is designed to inform computer software de-

velopers about Microsoft products, and to offer theoretical and technical programming insights into solving typically encountered problems. From 1987 to November 1989, Jonathan L. Lazarus ("Lazarus") was the Journal's publisher and editor. In 1988, Tony Rizzo ("Rizzo") was the technical editor of the Journal.

From March 14, 1988 to January 19, 1990, plaintiff Karen Strauss ("Strauss") was employed as an assistant editor, reporting to the technical editor. Between March 1988 and February 1989, Rizzo and Strauss worked together on five issues of the Journal. Their tasks included tracking software development, finding appropriate topics for the Journal, negotiating agreements with authors, scheduling, arranging all aspects of the technical review of Journal articles, aiding staff with technical issues during production, and preparing article abstracts and editor's notes.

## I. The Technical Editor Position

In February 1989, Rizzo resigned from his position at the Journal, and Lazarus began searching for Rizzo's replacement. Strauss contends that, in April 1989 and on four other occasions between May and July 1989 she asked Lazarus for a promotion to the vacant technical editor position.[1] Instead of receiving the technical editor job, however, Strauss was promoted to associate editor, receiving a $6,000 salary increase and a $2,750 bonus.

While Lazarus continued to search for a new technical editor, Strauss performed many of the technical editor's duties, including (1) selecting writers; (2) assigning articles; (3) following up with authors on the structure, content and technical accuracy of articles; (4) drafting abstracts and editor's notes; (5) reviewing layouts; and (6) answering technical questions that arose during the production process. In Strauss's August 1989 evaluation, Lazarus rated her between "exceeds performance standards" and "exceptional performance." He wrote in the evaluation, that "You have saved the Journal."

In late September 1989, Salvatore Ricciardi ("Ricciardi") commenced employment as technical editor. On October 10, 1989, Strauss complained to Microsoft's Human Resources Department that, although she was performing many of the technical editor's duties, Ricciardi was credited with the technical editor title and salary. One week later, on October 17, 1989, Ricciardi resigned from the company. After Ricciardi's resignation, Strauss again requested a promotion to the technical editor position, but Lazarus refused to promote her.

On October 18, 1989, Strauss filed a complaint with Microsoft's personnel department regarding Lazarus's failure to promote her to the technical editor position, contending that Lazarus's refusal was the result of gender discrimination. Gwen Weld ("Weld"), Microsoft's Manager of Personnel Practices, informed Strauss that she was not promoted because her "skills [were] not yet the level of Technical Editor."

Subsequently, On November 8, 1989, Eric J. Maffei ("Maffei") became employed as editor of the Journal, a new position that included the former technical editor's responsibilities. Strauss's working relationship with Lazarus and other Journal employees deteriorated, and, on January 19, 1990, her employment was terminated. Subsequently, in July 1991, the Journal hired Gretchen Bilson to work as technical editor of the Journal.

On August 29, 1991, Strauss commenced this action for gender discrimination based on Microsoft's failure to promote her to the technical editor position. At her deposition, Strauss indicated that, during the course of her employment at the Journal, Lazarus made comments and sent electronic mail ("e-mail") messages that were offensive to women. Specifically, Strauss indicated that Lazarus told her that he was "president of the amateur gynecology club" and "referr[ed] to a woman employee as the 'Spandex queen'." Deposition of Karen Strauss ("Strauss Dep."), taken on February 4, 1992, at 13–15. In addition, Strauss stated that Lazarus had

---

1. According to Microsoft, Strauss did not apply for the position of technical editor prior to Octo- ber 18, 1989.

referred to an African–American woman as "Sweet Georgia Brown," and had offered to pay her $500 to change her name. *Id.* at 24–25. Lazarus also sent e-mail messages to (1) the entire Journal staff containing sexual innuendo referring to male genitalia; (2) Strauss entitled "Alice in UNIX Land;" and (3) a Journal employee, who forwarded them to Strauss, containing sexually explicit messages.

## II. The 1993 Opinion

On July 31, 1992, Microsoft moved for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(b), with respect to Strauss's Title VII and state law claims. On February 22, 1993, the Court issued a Memorandum Opinion and Order denying Microsoft's motion. *See Strauss v. Microsoft Corp.,* 814 F.Supp. 1186 (S.D.N.Y. 1993) (the "1993 Opinion"). In the Opinion, after analyzing the burdens of production and proof used in employment discrimination cases pursuant to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), the Court considered whether (1) Strauss had established a *prima facie* case, thereby creating a presumption of discrimination; (2) Microsoft had articulated a legitimate, non-discriminatory reason for not promoting the plaintiff in order to rebut the presumption of discrimination; and (3) plaintiff had satisfied her burden of proving by a preponderance of the evidence that the proffered reasons were merely pretextual and not the true reasons for the failure to promote. *Id.* at 1191–94.

First, the Court found that Strauss demonstrated that she was qualified to be a technical editor, and that the Journal had attempted to fill the position after she was rejected. As a result, the Court concluded that Strauss had established a *prima facie* case of discrimination. *Id.* at 1192–93. Second, as Microsoft had produced evidence that it did not promote Strauss to the technical editor position because she was not qualified, the Court found that Microsoft had satisfied its burden of articulating a legitimate non-discriminatory reason for not promoting Strauss. *Id.* at 1193. Third, the Court concluded that Strauss had presented evidence "from which

a reasonable jury could determine that Microsoft's proffered reason for not promoting her [was] pretextual." *Id.* at 1193–94. Accordingly, Microsoft's motion for partial summary judgment was denied.

Subsequently, on June 25, 1993, the Supreme Court decided *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742 (*"Hicks"*), which re-examined a plaintiff's burden of proof in employment discrimination cases. Microsoft now renews its motion, pursuant to Federal Rule of Civil Procedure 56(b), for partial summary judgment on the Title VII and state law claims.

## DISCUSSION

Microsoft contends that, under *Hicks,* in order to avoid summary judgment, Strauss must set forth admissible evidence from which a reasonable jury could conclude that, not only is Microsoft's evidence of a legitimate, non-discriminatory reason pretextual, but also that its decision was motivated by an intention to discriminate. According to Microsoft, as the 1993 Opinion did not hold that there was sufficient evidence to permit a finding that Microsoft's true reason was an intent to discriminate, it is entitled to summary judgment as a matter of law.

### I. The *Hicks* Action

#### A. *Opinions of the Courts Below*

Respondent Melvin Hicks ("Hicks"), a black male, was hired as a correctional officer at St. Mary's Honor Center ("St. Mary's") in August 1978, and was promoted to the position of shift commander in February 1980. Subsequently, beginning in March 1984, Hicks became the subject of repeated disciplinary actions, eventually resulting in his demotion and discharge. As a result, Hicks sued for race discrimination in the United States District Court for the Eastern District of Missouri, alleging violations of Title VII and 42 U.S.C. §§ 1981 and 1983.

After a full bench trial, the district court found in favor of the defendants. *Hicks v. St. Mary's Honor Ctr.,* 756 F.Supp. 1244 (E.D.Mo.1991), *rev'd,* 970 F.2d 487 (8th Cir. 1992), *rev'd,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Specifically, the dis-

trict court found that Hicks had failed to meet his ultimate burden of proving that his race was the determining factor in the decision to demote and dismiss him. *Id.* at 1251. According to the Court, "although plaintiff has proven the existence of a crusade to terminate him, he has not proven that the crusade was racially rather than personally motivated." *Id.* at 1252. The Court based this conclusion, *inter alia,* on the fact that (1) the disciplinary review board that recommended demoting Hicks consisted of two black and two white individuals; (2) Hicks' black subordinates were not disciplined; and (3) the number of black employees at St. Mary's remained constant after Hicks' employment was terminated. *Id.* at 1252.

In a decision dated July 23, 1992, the United States Court of Appeals for the Eighth Circuit reversed the judgment of the district court and remanded the case. *See Hicks v. St. Mary's Honor Ctr.,* 970 F.2d 487 (8th Cir.1992), *rev'd,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). According to the Circuit Court:

> Once plaintiff proved all of defendants' proffered reasons for the adverse employment actions to be pretextual, plaintiff was entitled to judgment as a matter of law. Because all of defendants' proffered reasons were discredited, defendants were in a position of having offered no legitimate reason for their actions. In other words, defendants were in no better position than if they had remained silent, offering no rebuttal to an established inference that they had unlawfully discriminated against plaintiff on the basis of his race.

*Id.* at 492. As the district court found that Hicks had satisfied his burden of proving pretext, the Circuit Court held that he was entitled to judgment as a matter of law. *Id.* at 493.

### B. *The Supreme Court Opinion*

The Supreme Court granted certiorari, *see St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 954, 122 L.Ed.2d 111 (1993), to determine whether a finding of pretext mandates judgment for a plaintiff in the absence of a finding of intentional discrimination. The Court (by Scalia, J.) agreed with the Circuit Court that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. However, the *Hicks* Court rejected the Eighth Circuit's reasoning that a finding of pretext mandates a finding of discrimination. According to the Court, while "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination," such a rejection does not *compel* judgment for the plaintiff. *Id.* (emphasis in original).

The Court stated that the Eighth Circuit's finding "ignores our repeated admonition that the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *Id.* While the Court recognized that it could establish certain orders of proof as set forth in *McDonnell Douglas,* it stated that "nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable." *Id.* at ——, 113 S.Ct. at 2751. The Court concluded that:

> Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of (in the context of the present case) race. That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct. That remains a question for the factfinder.

*Id.* at ——, 113 S.Ct. at 2756.

### II. Post–*Hicks* Decisions

In analyzing the *Hicks* opinion, the Second Circuit has emphasized that, while the plaintiff bears the ultimate burden of proving discrimination in Title VII cases, rejection of the defendant's proffered reasons is a basis upon which a factfinder can infer intentional

**825**

discrimination. In *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 142 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), for example, the Second Circuit stated that "[w]e read *Hicks* as doing no more than reiterating the longstanding rule that despite shifting burdens of production, a plaintiff always shoulders the ultimate burden of proof." *Id.* The Court indicated, however, that "a factfinder's disbelief of a defendant's proffered rationale may allow it to infer the ultimate fact of intentional discrimination in some cases." *Id.*

Similarly, in *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170 (2d Cir.1993), the Second Circuit stated that "[p]roof that the employer has provided a false reason for its action permits the finder of fact to determine that the defendant's actions were motivated by an improper discriminatory intent, but does not compel such a finding." *Id.*

## III.   The Present Case

Microsoft now argues that the 1993 Opinion should be reversed, as plaintiff did not present any evidence of intentional discrimination in opposition to its motion for summary judgment.[2]  The Court disagrees.

■ Contrary to the defendant's assertion, the *Hicks* decision does not require that the Court make a finding of intentional discrimination based on evidence separate and apart from evidence that the defendant's proffered reasons are pretextual.  Rather, under *Hicks,* a trial court may infer intentional discrimination from evidence that the

defendant's proffered reasons are false. Thus, once a plaintiff establishes a *prima facie* case and raises a genuine issue of fact as to whether the defendant's reasons are pretextual, the ultimate finding of discrimination is a question for the factfinder.  *See Sun v. Asian Am. Recovery Servs., Inc.,* 92–15067, 1993 WL 337529, at *2, n. 1, 1993 U.S.App. LEXIS 22886, at *2, n. 1 (9th Cir. Sept. 1, 1993).

■ As the 1993 Opinion concluded, Strauss has presented sufficient evidence for a reasonable jury to find that Microsoft's proffered reasons for failing to promote Strauss were a mere pretext for a true discriminatory motive.  First, Strauss presented evidence that she successfully functioned as the technical editor during the interim periods before and after Ricciardi held the position.  *See Strauss v. Microsoft Corp.,* 814 F.Supp. at 1193.  There is also evidence that Ricciardi was not as qualified as Strauss for the job, and that Maffei was hired despite his lack of editorial experience.  This evidence could lead a reasonable jury to conclude that Microsoft's proffered reasons were pretextual.[3]

In addition, Strauss presented evidence from which a reasonable jury could find the ultimate fact of intentional discrimination. As the Court found in the 1993 Opinion, Lazarus's inappropriate office behavior, including his remarks and e-mail messages, could lead a reasonable jury to conclude that, not only was Microsoft's reason for its action pretextual, but also that it failed to promote Strauss as a result of gender discrimination.[4]

2. Microsoft also argues that the Court erred in finding a genuine issue of material fact as to whether Microsoft's reason for not promoting Strauss was pretextual.  Specifically, Microsoft contends that, while Strauss performed some of the technical editor's duties during the interim period in which Lazarus was looking for a replacement, there is no evidence that Strauss could be trusted with the responsibility for determining the content, focus and future direction of the Journal.  As this argument essentially rehashes the contentions made in Microsoft's original motion for summary judgment, the Court finds it to be without merit.  *See Strauss v. Microsoft Corp.,* 814 F.Supp. at 1193–94; *see also Wilder v. Bernstein,* 645 F.Supp. 1292, 1310 (S.D.N.Y.1986) (finding that the "law of the case" doctrine counsels against reopening issues

previously decided absent compelling circumstances), *aff'd,* 848 F.2d 1338 (2d Cir.1988).

3. Microsoft contends that, even if Strauss was qualified for the position, the Court is holding it responsible for an "incorrect" assessment of Strauss's qualifications, without determining whether Microsoft actually believed its own explanation for failing to promote her.  Contrary to the defendant's assertion, however, the Court has not reached any conclusion as to the sincerity of Microsoft's belief, and has merely found that a genuine issue of fact exists as to whether Microsoft's reasons were pretextual.

4. While Microsoft argues that there is no longer any connection between Lazarus's comments and e-mail messages and the challenged employ-

Accordingly, Microsoft's renewed motion for partial summary judgment based on the Supreme Court's decision in *Hicks* is denied.

## CONCLUSION

For the reasons set forth above, Microsoft's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment is denied. The parties are to submit an amended joint pretrial order on or before September 2, 1994, and are to appear for a pretrial conference before this Court on September 21, 1994, at 10:30 a.m. All expert discovery shall be completed prior to the conference.

SO ORDERED.

ment decision, the Court finds this argument unpersuasive. The *Hicks* case does not stand for the proposition that certain evidence consists only of "pretext" evidence and other evidence consists solely of "motive" evidence. Rather, the Court looks to the evidence as a whole in determining whether a genuine issue of fact exists as to Microsoft's intent. As the Court finds that such an issue does exist, Microsoft's motion for summary judgment must fail.