**Amelia GARGANO, Plaintiff–Appellee,**

**v.**

**DIOCESE OF ROCKVILLE CENTRE, Defendant–Appellant,**

**Trinity Regional School, Defendant.**

**No. 1193, Docket 95–7653.**

United States Court of Appeals, Second Circuit.

Argued March 11, 1996.

Decided April 3, 1996.

Reynold A. Mauro, Schlachter & Mauro, Commack, NY, for Plaintiff–Appellee.

Marshall D. Sweetbaum, Rockville Centre, NY (Robert Minion, Bennett, Pape, Rice & Schure), for Defendant–Appellant.

Before: WALKER, McLAUGHLIN and LEVAL, Circuit Judges.

WALKER, Circuit Judge:

Defendant-appellant Diocese of Rockville Centre (the "Diocese") appeals from a judgment of the United States District Court for the Eastern District of New York (Frederic Block, *District Judge*), holding the Diocese liable for breach of plaintiff's employment contract. *Gargano v. Diocese of Rockville Centre*, 888 F.Supp. 1274 (E.D.N.Y.1995). The district court upheld the jury's verdict that the Diocese was an employer of the plaintiff, Amelia Gargano, and set damages at $83,300, plus pre-judgment and post-judgment interest. On appeal, the Diocese raises three issues: (1) whether the Diocese was an "employer" of Gargano under New York law, (2) whether the Diocese was required to renew Gargano's contract beyond August 31, 1992, and (3) whether the instant action is an unconstitutional entanglement of church and state. We affirm.

## BACKGROUND

Gargano was a second grade teacher at St. Anthony of Padua Parish School ("St. Anthony") from 1969 until August 1992. At the end of the 1991–92 school year, the Diocese undertook a reorganization of its schools. As part of this process, the Diocese created a new "region" consisting of the parish in which St. Anthony was located and five contiguous parishes. The Diocese created a new school, defendant Trinity Regional School ("Trinity") to serve all six parishes, and closed the old schools located in the region, including St. Anthony.

Prior to the beginning of each year of her employment, Gargano was required to sign a letter of intent. These letters of intent, which were printed on the Diocese's letterhead, incorporated the terms of the Diocese's handbook for teachers (the "Teachers' Handbook"). In November 1991, the Diocese created guidelines for the hiring of the faculty at Trinity in connection with the reorganization and made the guidelines part of the Teachers' Handbook. These guidelines stated that, whenever possible, the teachers at Trinity were to be drawn from the ranks of the faculties of the three former parish schools. The guidelines also provided that all applicants would be thoroughly evaluated on the

basis of their professional qualifications, performance evaluations, references, and length of service in Catholic education. Gargano applied for one of the positions at Trinity and was interviewed by Jeanne Morcone, the principal-designate of Trinity (and then-principal of another parish school in the region), and Sister Eileen McMahon, principal of another parish school in the region. Gargano testified at trial that she was interviewed for only twenty minutes and that the interview did not focus on her evaluations, goals, or weaknesses, but instead consisted of matters irrelevant to her qualifications, including a discussion of certain members of the clergy. She was not offered a position at Trinity.

In November 1992, Gargano brought this action against the Diocese, Trinity, and other defendants who were dismissed at trial by stipulation. Gargano's amended complaint asserted a federal claim for discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34; a state law claim for breach of an employment contract; and a state law claim for discrimination in violation of N.Y. Exec. Law § 296, a claim which was later abandoned. At trial, the jury returned a verdict against Gargano on the ADEA claim, but ruled in her favor on her contract claim, answering a special verdict form agreed to by the parties that (i) the Diocese was Gargano's employer, (ii) the Teachers' Handbook constituted part of the employment contract existing between the Diocese and Gargano, and (iii) the Diocese breached those provisions of the Teachers' Handbook in which it promised to evaluate Gargano according to certain objective criteria. *Gargano*, 888 F.Supp. at 1277, 1284.

The Diocese moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) both at the close of Gargano's case and after the Diocese had rested. The district court denied the motions. After the verdict, the Diocese renewed its motion pursuant to Fed.R.Civ.P. 50(b), and again was unsuccessful. The district court then directed the parties to submit memoranda on the issue of the appropriate remedies, if any, beyond the parties' stipulated amount of $83,300 in damages. The Diocese also moved for reargument of its previous motions for judgment as a matter of law. The district court denied the Diocese's motion for reargument. In addition, it found that Gargano was only entitled to damages in the stipulated amount and was not entitled to an order requiring that Trinity hire her. The district court ordered that judgment be entered against the Diocese in the amount of $83,300, plus pre-judgment and post-judgment interest.

## DISCUSSION

■ On appeal, the Diocese first argues that the evidence was insufficient to support the jury's finding that the Diocese had an employer-employee relationship with Gargano. As the district court found, this was a factual matter properly left to the jury. *Gargano*, 888 F.Supp. at 1278–82. Gargano presented the jury with more than sufficient evidence from which the jury could conclude that the Diocese was an employer of Gargano. For instance, the letters of intent were printed on the Diocese's letterhead; the Teachers' Handbook, incorporated by reference into the letters of intent, was promulgated by the Diocese and set forth the principal terms of employment; and Diocesan officials had final authority over the hiring and firing of teachers at Trinity. Because we find that there was "sufficient evidence to permit a rational juror to find in [Gargano's] favor," we must affirm the district court's decision. *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1039 (2d Cir. 1992).

■ The Diocese's second contention is that, because Gargano only signed a one-year contract that expired in August 1992, she is not entitled to any damages. This argument is completely without merit. As the district court noted, the Diocese specifically stipulated that, in the event that the jury found in favor of Gargano on either her ADEA or breach of contract claims, she would receive $83,300 in back pay. *Gargano*, 888 F.Supp. at 1285. The district court therefore instructed the jury only that it should determine whether any amounts should be deducted from this figure because Gargano failed to mitigate her damages. *Id.* at 1285 & n. 7. The parties also agreed that the issues of

front pay and any other remedy would be decided by the district court after the jury returned its verdict. *Id.* at 1286. Thus, on appeal the Diocese's only argument can be that the district court erred in failing to instruct the jury that no damages should be awarded if it found that Gargano would not have been hired even if the Diocese had not breached the contract between them. By failing to object to the charge, however, the Diocese waived this argument. *See* Fed. R.Civ.P. 51; *Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 55 (2d Cir.1992).

 Finally, the Diocese argues that the district court's finding that the Diocese breached its contract with Gargano required judicial assessment of religious dogma, in violation of the Establishment Clause's prohibition against the entanglement of government with religion. The Supreme Court ruled in *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), that NLRB supervision of teacher-parochial school labor relations raised sufficiently serious Establishment Clause concerns that, absent an affirmative showing of congressional intent to make the National Labor Relations Act applicable, the statute would not be read to apply to schools operated by a church to teach both religious and secular subjects. Religious groups, however, are generally not immune from all governmental regulation of their employment relationships, or from court enforcement of those laws. For instance, in *DeMarco v. Holy Cross High School,* 4 F.3d 166 (2d Cir.1993), we held that a lay teacher could bring an action against his parochial school employer under the ADEA. We distinguished *Catholic Bishop* on the ground that judicial enforcement of rights under the ADEA would not generally require the same "extensive or continuous administrative or judicial intrusion into the functions of religious institutions." *DeMarco,* 4 F.3d at 170; *see also Weissman v. Congregation Shaare Emeth,* 38 F.3d 1038, 1044 (8th Cir.1994) (same); *Geary v. Visitation of the Blessed Virgin Mary Parish Sch.,* 7 F.3d 324, 328 (3d Cir.1993) (same). We did note that there might be cases arising under the ADEA where "the relationship between employee and employer is so pervasively religious that it is impossible to engage in an age-discrimination inquiry without serious risk of offending the Establishment Clause." *DeMarco,* 4 F.3d at 172. Nonetheless, we found that on the facts of *DeMarco,* no such danger existed.

Of course, in this case the Diocese is not challenging the application of the ADEA, but rather the enforcement of state employment contract law. In our view, this is a distinction without a difference. Like the ADEA, the judicial enforcement of state employment contract law generally requires little intrusion into the functioning of religious institutions. Furthermore, the only reference to religion made by the Diocese is its conclusory allegation that Gargano was not hired at Trinity because she "did not adequately prepare … children for the sacraments." Brief for Defendant–Appellant at 29. Like the plaintiff's alleged failures to perform his religious duties in *DeMarco,* we believe that this allegation against Gargano did not put "into issue the validity or truthfulness of Catholic religious teaching." *DeMarco,* 4 F.3d at 172. The Diocese's entanglement argument must be rejected.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.